UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
JEFFREY MONSOUR,

                              Plaintiff,

        -against-                                          1:13-CV-0336 (TJM)(CFH)

THE NEW YORK STATE OFFICE FOR
PEOPLE WITH DEVELOPMENTAL
DISABILITIES, JAMES INTRONE, and
CATHY LABARGE,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
THOMAS J. McAVOY
Senior United States District Judge


                              DECISION & ORDER

I.  INTRODUCTION

        Plaintiff JEFFREY MONSOUR ("Plaintiff") commenced this action against THE

NEW YORK STATE OFFICE FOR  PEOPLE WITH DEVELOPMENTAL DISABILITIES

("OPWDD"), JAMES INTRONE ("Introne"), and CATHY LABARGE ("LaBarge").  Presently

before the Court is Defendants OPWDD and LaBarge's motion to dismiss the claims

against them. (Motion, dkt. # 21).

        Plaintiff asserts claims against OPWDD and LaBarge pursuant to 42 U.S.C. § 1983

(First Amendment retaliation and Due Process claims), state law (breach of contract

against OPWDD and LaBarge, defamation against LaBarge ); the federal False Claims

Act, 31 U.S.C. § 3730(h) (against LaBarge); and New York's False Claims Act, N.Y. State

Fin. Law § 191 (against LaBarge).  OPWDD and LaBarge move to dismiss the claims

against them pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  Plaintiff opposes the motion,

1

OPWDD and LaBarge have filed a short reply, and Plaintiff has filed what is essentially a sur-reply. The Court has considered each of these in arriving at its conclusions set forth below.

## II.   STANDARDS OF REVIEW

### a.   Amended Pleading

Plaintiff filed an Amended Complaint after Defendants filed their motion to dismiss. Inasmuch as the Amended Complaint supersedes the original Complaint, and both parties having addressed their arguments to the allegations in the Amended Complaint, the Court will address the sufficiency of the Amended Complaint.

### b.   Fed. R. Civ. P. 12(b)(1)

A motion brought pursuant to Fed. R. Civ. P. 12(b)(1) challenges the subject matter of the Court to address a case or certain claims in the case. A case is to be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States*, 201 F. 3d 110, 113 (2d Cir. 2000). A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *See Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002); *see also Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996). When a defendant moves to dismiss claims pursuant to Fed. R. Civ. P. 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Medical Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993). For the purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true." *Id.*

2

Both the movant and pleader may use affidavits and other pleading materials to support or oppose a motion to dismiss for lack of subject matter jurisdiction. *See Makarova*, 201 F.3d at 113; *Filetech S.A. v. France Telecom, S.A.*, 157 F.3d 922, 932 (2d Cir. 1998); *John Street Leasehold, LLC v. Capital Mgt. Res., L.P.*, 154 F. Supp. 527, 533 (S.D.N.Y. 2001). Further, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Gunst v. Seaga,* No. 05 Civ 2626 DAB, 2007 WL 1032265, at *2 (S.D.N.Y. March 30, 2007) (quoting *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129 (2d Cir. 1998)). "Thus, the standard used to evaluate a Rule 12(b)(1) motion is similar to that used for summary judgment under Fed. R. Civ. P. 56." *Lopresti v. Merson*, 2001 WL 1132051, at *5 (S.D.N.Y. Sept. 21, 2001).

### <u>c.</u>    <u>12(b)(6)</u>

On a motion to dismiss, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

III.  **BACKGROUND**[1]

a.  **Factual Background**

Plaintiff has been employed by the New York State Office for People with

Developmental Disabilities ("OPWDD") for fourteen years. (Am. Compl. ¶ 3.)  During

that time, Plaintiff has complained about the treatment of individuals with disabilities in

OPWDD's care and become an outspoken advocate for the disabled. (*Id.* ¶¶ 3, 10, 43-53,

57, 59, 63-68, 78.)

In 2009, the Capital District Developmental Disabilities Services Office ("DDSO")

issued a Notice of Discipline (a "NOD") to Plaintiff regarding an incident involving a co-

worker that took place in front of a OPWDD consumer. (*Id*. ¶¶ 4, 20, 23.)  Plaintiff was

also temporarily reassigned as a result of the incident. (*Id*. ¶ 21.)  Plaintiff challenged the

charge of misconduct, resulting in arbitration ("NOD Arbitration"). (*Id.* ¶¶ 4, 24-25.)

Defendant Cathy LaBarge, Director of Labor Relations of OPWDD, participated in the

NOD Arbitration on behalf of the DDSO. (*Id*. ¶¶ 19, 25.)

On September 30, 2011, the parties settled the NOD Arbitration, resulting in a

stipulated Consent Award. (*Id*. ¶ 26.)  As agreed by the parties, Plaintiff received a letter of

reprimand, which indicated that it would remain in his personnel file for eighteen months,

together with the Notice of Discipline, the Consent Award and Plaintiff's rebuttal letter. (*Id*.

¶ 27.)

Thereafter, Plaintiff requested a copy of his personnel file.  In it he found only the

NOD with an e-mail attached, dated October 12, 2011, from Defendant LaBarge to certain

_____

[1]For purposes of this motion, the Court accepts as true the well-pleaded allegations of the Amended
Complaint.

OPWDD and DDSO employees (the "LaBarge Memo").[2]  According to Plaintiff, the

LaBarge Memo contained falsehoods, including claims that Plaintiff was guilty of abuse

although he had never been charged with abuse. (*Id.* ¶¶ 33-34).  Plaintiff contends that as

a result of the LaBarge Memo and the failure to have the Consent Award and Plaintiff's

rebuttal letter in his personnel file, he has been denied promotions and other positions for

which he was the most qualified applicant. (*Id*. ¶¶ 40-41, 75, 87, 100, 120, 125).

Plaintiff also asserts that LaBarge "retaliated" against him for "whistleblowing

activities" by failing to eliminate hostility at OPWDD, constitutively discharging him, making

false allegations against him, and failing to promote him. (*Id.* ¶¶ 74, 75, 77, 93, 120, 125.)

## B.    Procedural Background

On March 25, 2013, Plaintiff commenced this action against Mr. Introne and Ms.

LaBarge, in their official capacities, and OPWDD, seeking compensatory and punitive

---

[2]This e-mail provides:

I just received a copy of Mr. Monsour's settlement and am dismayed and disappointed that it is not what Capital District DDSO agreed to when these negotiations were being discussed.  April Lambert, Matt Guinane and I represented The State throughout this process.  We held steadfast that we would NOT remove this NOD from Mr. Monsour's files as part of any settlement. We did recently agree that the Letter of Reprimand could be removed, as long as the actual NOD remained as a permanent part of his file. Now I see that the NOD only has to remain in this file for a period of 18 months. We would never agree to do that for our employees in an abuse case.  Also, we held steadfast that there would be no language in the settlement suggesting "no admission of guilt", yet I see in Mr. Monsour's rebuttal letter, which we have been directed to include with the NOD, that he states "my agreement to receive the Letter of Reprimand and Consent Award is in no way an admission of guilt ... " We did not have any discussion about any type of "rebuttal" statement to be included with this NOD, nor have we ever entertained a rebuttal statement in the past. The rebuttal statement that I received is not signed by Mr. Monsour nor by his attorney, Mr. Sadowski. I'm sure you are aware that his intent in including the "no admission of guilt" language, he is now under the impression that his personal Notice of Discipline is not FOILable under the guidelines we use. If in fact this rebuttal letter must be included with his NOD, I would like to ask that counsel's office to weigh in on whether it does render his NOD as unable to be FOILed. Again, this was one of our major points during this extremely lengthy arbitration process. Please advise.

Am. Compl. ¶ 31.

damages and attorney's fees and costs.  In his initial complaint, Plaintiff asserted nine

claims. All defendants moved to dismiss the initial complaint on July 5, 2013.  In lieu of a

response to the motions, Plaintiff filed the Amended Complaint on July 25, 2013.  In the

Amended Complaint, Plaintiff sets forth the following claims against OPWDD and/or

LaBarge in her individual and official capacities:

-First Claim: First Amendment retaliation, pursuant to 42 U.S.C. § 1983;

-Third Claim: due process "constructive discharge" under the Fifth Amendment,

pursuant to 42 U.S.C. § 1983;

- Fourth Claim: breach of contract claim based upon a failure to comply with a

disciplinary settlement agreement;

-Fifth Claim: defamation claim against Ms. LaBarge under New York State

common law;

-Sixth Claim: federal False Claims Act against Ms. LaBarge based upon

alleged retaliation for whistleblowing activities, under 31 U.S.C. §3730(h);

-Seventh Claim: state False Claims Act against Ms. LaBarge based upon alleged

retaliation for whistleblowing activities, under N.Y. State Finance Law §191.[3]

Plaintiff seeks compensatory damages; punitive damages; attorneys fees and

costs; an order "referring the underlying civil rights allegations to the United States

attorney for investigation/prosecution;" and an order "removing [plaintiff] from the hostile

work environment, and placing him in a comparable replacement position." (Am. Compl.

---

[3]In Plaintiff's original Complaint he presented "whistleblower" claims invoking N.Y. Civil Service Law §75-b. Though the Amended Complaint uses the term "whistleblower" it contains no reference to §75-b. The Amended Complaint fully supersedes Plaintiff's prior pleading. Northern District Local Rule 7.1(a)(4). Accordingly, any previously asserted claims under that statute are deemed abandoned.

pp. 32-33).

By Order dated July 31, 2013, the Court granted Defendants leave to file memoranda of law in support of their motions in light of the filing of the Amended Complaint.  OPWDD and LaBarge (collectively "Defendants") contend that the Court should dismiss the Amended Complaint in its entirety and with prejudice as to them. Plaintiff has opposed this motion.

## IV.    DISCUSSION

### a.    Sovereign Immunity

#### 1.  Eleventh Amendment

Defendants move to dismiss the claims against them based upon Eleventh Amendment immunity. The Eleventh Amendment serves as a jurisdictional bar to suits against a state agency regardless of the nature of the relief sought, including suits in equity. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984); *Green v. Mansour*, 474 U.S. 64, 72-73 (1985); *see also Komlosi v. New York State Office of Mental Retardation and Developmental Disabilities*, 64 F.3d 810 (2d Cir. 1995)(OMRDD is an arm of the state and is immune under the Eleventh Amendment). "To the extent a state official is sued for damages in his or her official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Rourke v. N.Y.S. Dep't of Corr. Servs.* 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (McAvoy, J.) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir. 1993), *cert. denied,* 510 U.S. 1073 (1994); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993)).

### 2. OPWDD

Plaintiff argues that the claims against OPWDD are not barred by the Eleventh Amendment because they concern claims over the enforcement of a consent decree and the enforcement of the consent decree "furthers federally protected rights." Pl. Memo. L., p. 10. The argument is baseless. The case cited by Plaintiff in support of his argument, *Kozlowski v. Coughlin,* 871 F.2d 241 (2d Cir. 1989), concerned a consent decree entered in a federal district court prisoner class action in which the District Court enjoined the New York State Department of Correctional Services from enforcing a DOCS directive that had the effect of impinging inmates' liberty interests in their prison visits without due process. *See Kozlowski v. Coughlin*, 539 F. Supp. 852 (S.D.N.Y. 1982). The Second Circuit examined whether the Eleventh Amendment barred a federal court from enforcing a consent decree entered in its own court, and found that it did not. *Kozlowski*, 871 F.2d at 244. In making this determination, the Court found that the consent decree "1) 'spring[s] from and serve[s] to resolve a dispute within the court's subject-matter jurisdiction,' 2) 'come[s] within the general scope of the case made by the pleadings,' and 3) 'further[s] the objectives of the law upon which the complaint was based.'" *Id.* (quoting *Local Number 93, International Association of Firefighters v. City of Cleveland*, 478 U.S. 501, 525, 106 S. Ct. 3063, 3077, 92 L. Ed.2d 405 (1986)(citations omitted)). Moreover, the Court found that "by consenting to the decree, the Commissioner waived eleventh amendment immunity." *Id.*

Here, the Consent Award in the disciplinary proceeding did not spring from and serve to resolve a dispute within the Court's subject-matter jurisdiction, and OPWDD did

not waive eleventh amendment immunity by entering the disciplinary Consent Award. Enforcement of the disciplinary Consent Award implicates state law despite Plaintiff's contention that the failure to comply with its terms also causes a constitutional violation, and state law provides the avenue for enforcement of the Consent Award. Thus, the Court finds that the Eleventh Amendment bars the claims against OPWDD.

### 3. LaBarge, Official Capacity

A narrow exception to eleventh amendment immunity allows a federal court to issue an injunction against a state official in his or her official capacity who is acting contrary to federal law. *Ex Parte Young*, 209 U.S. 123 (1908); *see Pennhurst*, 465 U.S. at 102; *New York Health and Hospitals Corporation et al. v. Perales*, 50 F.3d 129 (2d Cir. 1995). This exception is a limited one, utilized only "when there is a specific conflict between the federal mandate and the state plan or practice that a federal right is implicated," *Doe v. Pfrommer*, 148 F. 3d 73, 80-81 (2d Cir. 1998), and is authorized to "vindicate the supremacy of [federal] law." *Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir. 2000).[4]

To the extent the claims against LaBarge in her official capacity seek monetary damages, they must be dismissed under the Eleventh Amendment. To the extent the claims against LaBarge in her official capacity seek an injunction "[r]emoving [Plaintiff] from the hostile work environment, and placing him in a comparable replacement position," (Am. Compl., "Wherefore" clause, p. 33), the claims are not barred provided

---

[4]The Supreme Court has held that "[i]n determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland Inc. v. Public Serv. Comm. Of Maryland,* 122 S. Ct. 1753, 1760 (2002)(quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 296 (1997)(O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment). The inquiry "does not include an analysis of the merits of the claim." *Id.* at 1761.

Plaintiff can establish that LaBarge has and continues to violate Plaintiff's federally protected right and has the capability to act in a manner that eliminates the asserted violation (*i.e.* has the authority to transfer Plaintiff).

### 3. LaBarge, Individual Capacity

Plaintiff's claims for damages against LaBarge in her individual capacity are not subject to an eleventh amendment immunity defense. *See, e.g., Hafer v. Melo*, 502 U.S. 21, 27–31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). "A claim for damages against a state, county or municipal employee will be viewed as one asserted against [her] in [her] individual capacity if it is the plaintiff's intent—as manifested in the pleading or otherwise—to seek the relief directly from that individual rather than from the employing government or agency." *Thomas v. Calero*, 824 F. Supp.2d 488, 498 (S.D.N.Y. 2011)(citing *Davis v. New York*, 316 F.3d 93, 102 (2d Cir. 2002) (in turn citing *Hafer*, 502 U.S. at 27–31); *Huang v. Johnson*, 251 F.3d 65, 70 (2d Cir. 2001); *Rodriguez v. Phillips*, 66 F.3d 470, 482 (2d Cir.1995); *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001))). "The fact that the state may decide to indemnify the individual defendant if [she] is found liable does not alter this analysis or change a claim's status from one of individual-capacity to official-capacity." *Id.* at 498, n. 5 (citing *Huang*, 251 F.3d at 70 (in turn citing *Farid v. Smith*, 850 F.2d 917, 923 (2d Cir.1988))).

### b. Section 1983 Claims

#### 1. Statue of Limitations

In a federal action brought under §1983, the applicable statute of limitations is the three year period established by New York CPLR §214. *Ormiston v. Nelson*, 117 F.3d 69,

71 (2d Cir. 1997); *Flaherty v. Massapequa Public Sch.*, 752 F. Supp.2d 286, 292 (E.D.N.Y. 2010).  A Section 1983 claim ordinarily "accrues when the plaintiff knows or has reason to know of the harm." *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir.1994) (quotation marks omitted).  Defendants argue that "[t]hough the time line of events in plaintiff's Amended Complaint is obscurely defined, it provides enough benchmarks from which to conclude that no §1983 action may proceed." Def. Mem. L. p. 9.  Plaintiff argues that he was subjected to a "continuing violation" and, therefore, his claims run from the last event of the on-going violation. Pl. Mem. L. pp. 11-12.

> The continuing violation doctrine is an "exception to the normal knew-or-should-have-known accrual date." *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir.1999). When the plaintiff brings a Section 1983 claim challenging a discriminatory policy, "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir.1994) (quotation marks omitted); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116–17, 122 S. Ct. 2061, 153 L. Ed.2d 106 (2002) (stating the same of hostile work environment claims under Title VII). To trigger the continuing violation doctrine when challenging discrimination, the plaintiff "must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Harris*, 186 F.3d at 250.

*Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009).

Whether Plaintiff has been subjected to a pattern of connected retaliatory treatment as he alleges in his lengthy Amended Complaint, or to discrete unrelated events, is an issue that cannot be resolved at the Rule 12 stage.  The motion in this regard is denied. Defendants may renew the argument on a Rule 56 motion.

### 2.  First Amendment Retaliation

In Plaintiff's "First Claim," he asserts that LaBarge caused him to be subjected to a

hostile work environment and deprived him of promotions, all in retaliation for his criticisms of the OPWDD. Defendants contend that Plaintiff fails to assert a plausible claim for First Amendment retaliation.

## A. First Amended Retaliation Standard

To state a prima facie case of First Amendment retaliation under § 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech at issue was constitutionally protected; (2) the defendant took adverse employment action against the plaintiff; and (3) there was a causal connection between the speech and the adverse employment action so that it can be said that the speech was a motivating factor in the determination. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Washington v. Cnty. of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004).

Without conceding the issue, Defendants assume for purposes of the motion that Plaintiff's statements are protected by the First Amendment and offer no argument to the contrary. *See* Def. Mem. L., p. 9, n. 3.[5] Absent argument by the parties, the Court will also assume for purposes of this motion, without deciding, that Plaintiff's speech is protected by the First Amendment.

Adverse employment actions may include both harsh and less severe sanctions, including discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand. *See Phillips v. Bowen,* 278 F.3d 103, 109 (2d Cir. 2002). But only retaliatory

---

[5]Although Defendants draw this assumption, their footnote cites to case law that may support the conclusion that Plaintiff's speech is not protected by the First Amendment. *See* Def. Mem. L. p. 9, n. 3 ("Statements by agency employees made in connection with their offical duties are not 'protected speech.' *E.G. Garcetti v. Ceballos*, 547 U.S. 410 (2006) (Statements by agency employees made in connection with their official responsibilities are not "protected speech."); *Matthews v. City of New York, et al.*, 2013 U.S. Dist. LEXIS 105940 (S.D.N.Y. July 29, 2013); *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340 (S.D.N.Y. 2010).").

conduct sufficient to "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights" constitutes adverse action taken. *Zelnik v. Fashion Inst. of Tech.,* 464 F.3d 217, 225 (2d Cir. 2006) (internal quotation marks omitted). The causal connection must be sufficient to support the inference that such speech played a "substantial" or "motivating" part in a defined adverse employment action taken by plaintiff's employer. *Mt. Healthy,* 429 U.S. at 287; *Ezekwo v. NYC Health & Hospitals Corp*., 940 F.2d 775, 780- 81 (2d Cir. 1991). Moreover, as with any claim presented under §1983, Plaintiff bears the burden to allege personal involvement in events giving rise to First Amendment liability. *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074 (2011); *Iqbal*, 129 S. Ct. at 1949; *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

### B. Parties' Positions

Defendants argue that the Amended Complaint makes "scattered, conclusory references" to a "hostile work environment" that are insufficient to state a plausible adverse employment action, and that Plaintiff's "failure to promote" claim likewise fails to allege any adverse employment action arising out of the exercise of his First Amendment rights. Plaintiff contends that the Amended Complaint adequately sets forth an averse employment actions by LaBarge causally connected to the Plaintiff's speech. The Court will examine whether Plaintiff has pled a First Amend Retaliation claim under either a "hostile work environment" or a "failure to promote" theory.

### C. Hostile Work Environment

"[W]hether an undesirable employment action qualifies as being 'adverse' is a heavily fact-specific, contextual determination," *Hoyt v. Andreucci*, 433 F.3d 320, 328 (2d

Cir. 2006), and requires a showing that "an alleged act of retaliation is more than de minimis." *Davidson v. Chestnut*, 193 F.3d 144,150 (2d Cir. 1999). Though relatively de minimis incidents standing alone will not give rise to a First Amendment retaliation claim, precedent allows a combination of even seemingly minor incidents to form the basis of a constitutional retaliation claim once they reach "a critical mass" and create "a working environment unreasonably inferior to what would be considered normal for that position." *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) (internal quotation marks and citations omitted). However, to reach "critical mass," there must be evidence of a "a pattern of nearly constant harassment." *Id.*; *see Hoover v. County of Broome,* 340 Fed. Appx. 708*, 710 (2d Cir. Aug. 03, 2009).

Plaintiff describes only three "harassing" events in which LaBarge's personal involvement can be discerned. First, Plaintiff claims that in 2010, LaBarge represented the Capital District DDSO in connection with arbitration upon the Notice of Discipline arising from Plaintiff's July, 2009 argument in front of a OPWDD client. (Am. Compl. ¶ 25). In the aftermath of that matter, Plaintiff claims, LaBarge caused unfavorable information to be included in his personnel file. Second, Plaintiff claims that LaBarge, sometime after a March 2011 newspaper article, was involved in investigating an incident in which Plaintiff dispensed food from an OPWDD facility to a visitor. (*Id.*, ¶ 53). Third, Plaintiff describes a single occasion, on an unknown date, when LaBarge "got on the telephone and yelled at [Plaintiff]" to tell him to stop harassing Human Resources personnel. (*Id.,* ¶ 83).

The allegations fail to plead a plausible claim that, in retaliation for Plaintiff's

protected speech, LaBarge was personally involved in a pattern of "nearly constant harassment" of Plaintiff. Thus, the claim in this regard must be dismissed. Because Plaintiff has failed to include sufficient allegations of a pattern of harassment perpetrated by LaBarge despite amending his Complaint *after* Defendants filed their motion to dismiss, it must be assumed that he does not have any more allegations establishing Labarge's personal involvement in harassing conduct. Accordingly, the First Amendment retaliation claim on this theory is dismissed with prejudice.

### D. Failure to Promote

An adverse employment actions can also include the failure to promote, *Morris v. Lindau, et al.*, 196 F.3d 102 (2nd Cir. 1998), and improper disciplinary action. *Scott v. Coughlin*, 344 F.3d 282 (2d Cir. 2013). Plaintiff has pled that Plaintiff's free speech was a motivating factor in LaBarge's individual conduct of writing the LaBarge Memo, disseminating it, and causing it to be placed in Plaintiff's personnel file. (Am. Compl. ¶¶ 31-39). Plaintiff has also asserted that LaBarge's conduct in this regard has caused him to lose "two promotions for which he was the top qualifying applicant." (*Id.*, ¶ 108). These allegations are sufficient to plead a plausible First Amendment retaliation claim. Whether Plaintiff can establish that LaBarge caused her memo to placed in Plaintiff's employment file; whether the LaBarge Memo caused Plaintiff to be denied a promotion; and whether Plaintiff can establish that LaBarge was motivated in part by consideration of Plaintiff's speech, are all matters that cannot properly be decided at the Rule 12(b) stage. Accordingly, the motion to dismiss the First Amendment retaliation claim on the theory of denial of promotional opportunities is denied.

### 3. Denial of Due Process

On Plaintiff's "Third Claim" (Am. Compl. ¶100), he seeks relief under §1983 for a violation of his

> Fifth Amendment right to be free of interference with his property rights without due process. Plaintiff possesses a property right in his employment position at OPWDD. By her actions, [LaBarge] has caused a constructive discharge of plaintiff from his employment position and wrongfully prevented Plaintiff from obtaining promotions to which he was objectively entitled. . . .

*Id.*

The claim is both for constructive discharge and for denial of promotion, which the Court will examine separately.

### A. Constructive Discharge

A constructive discharge claim requires a plaintiff to show that a defendant deliberately made his working conditions "so intolerable that [he was] forced into an involuntary resignation." *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983). There must be evidence that a defendant "deliberately created working conditions that were 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993) (quoting *Pena*, 702 F.2d at 325); *see also Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 361 (2d Cir.1993)(same).

Despite the overall length of the Amended Complaint (33 pages, 127 paragraphs), Plaintiff provides few facts supporting his claim that he was forced into involuntary resignation - the *sin qua non* of a constructive discharge claim. While he does allege that "LaBarge has caused a constructive discharge of Plaintiff from his employment," this is but

a legal conclusion that provides no factual support to the claim.

Moreover, as indicated above with regard to the First Amendment retaliation/ hostile work environment claim, Plaintiff alleges only three incidents in which LaBarge was directly involved.  These three incidents are insufficient to permit a rational trier of fact to infer that the LaBarge deliberately created working conditions that were so difficult or unpleasant that a reasonable person in Plaintiff's shoes would have felt compelled to resign.

Further, in order to state a cognizable Fifth Amendment denial of due process claim, Plaintiff must show that he was denied a property interest and that he did not have resort to a post-deprivation remedy.  *Rother v. NYS Dept. of Corrections and Community Supervision*, --- F. Supp. 2d ----,  No. 1:12-CV-0397 (LEK/CFH), 2013 WL 4774484, at *12 (N.D.N.Y. Sept. 04, ,2013);[6] *Davis v. City of New York, et al*.,  2007 U.S. Dist. LEXIS 78031 (E.D.N.Y. Sept. 28, 2007)(There can be no constitutional violation, and no §1983

---

[6]As Judge Kahn wrote in *Rother:*

[E]ven if Plaintiff was constructively discharged, she cannot show that she did not receive due process. While a public employee with a property right in her job is normally entitled to a pre-termination hearing, *see Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L.Ed.2d 494 (1985), employees who are constructively discharged are not. *See Hoover v. Cnty. of Broome*, 340 Fed. Appx. 708, 711 (2d Cir. 2009); *Giglio v. Dunn*, 732 F.2d 1133, 1134–35 (2d Cir.1984) ("When an employee resigns, the only possible dispute is whether the resignation was voluntary or involuntary, and this cannot be determined in advance."); *Fortunato v. Liebowitz*, No. 10 Civ. 02681, 2012 WL 6628028, at *4 (S.D.N.Y. Dec. 20, 2012). As long as a meaningful post-resignation hearing is available, a constructively discharged employee has received constitutionally adequate process. *Giglio*, 732 F.2d at 1135; *Hoover*, 340 Fed. Appx. at 711. A hearing under N.Y. C.P.L.R. § 7801 *et seq.* ("Article 78 hearing") is meaningful. *Giglio*, 732 F.2d at 1135; *Hoover*, 340 Fed. Appx. at 711. Thus, if Plaintiff could have initiated an Article 78 proceeding, she has not been denied due process.

Article 78 proceedings are available to public employees, including employees of state agencies. *See Giglio*, 732 F.2d at 1135; *Sebast v. Mahan*, 754 F. Supp.2d 423 (N.D.N.Y.2010); *Allen v. Howe*, 84 N.Y.2d 665, 621 N.Y.S.2d 287, 645 N.E.2d 720 (1994).

cause of action, "when a plaintiff has access to an adequate state post-deprivation procedure to remedy a random, arbitrary deprivation of property or liberty.")(internal citations omitted); *cf. Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir.1984)(finding that only a post-deprivation remedy was practical where the employee alleged a coerced resignation). Here, even assuming the evidence could support the inference that Plaintiff suffered a constructive discharge, the claim must be dismissed because Plaintiff had resort to the adequate post-deprivation remedy of an Article 78 proceeding. *See Hoover* 340 Fed. Appx. at 711("Even assuming the evidence could support the inference that [plaintiff] suffered a constructive discharge, . . . [h]aving failed to utilize the adequate post-deprivation remedy of an Article 78 proceeding, [plaintiff's] claim is without merit.")(citing *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 465-66 (2d Cir. 2006)). Because Plaintiff does not, and cannot, allege a lack of adequate recourse under State law, his due process claim premised on a constructive discharge theory is dismissed with prejudice.

### B. Denial of Promotion

Plaintiff also asserts that LaBarge's conduct caused him to be denied two promotions when he was the most qualified candidate for each position, in violation of his right to due process. Assuming without deciding that Plaintiff has a property right in promotion to positions for which he is the top qualified applicant, he must also show that he did not have resort to a post-deprivation remedy. As the Second Circuit has held:

> Where a due process claim is "based on random, unauthorized acts by state employees," there is no due process violation "so long as the State provides a meaningful post-deprivation remedy." *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880 (2d Cir.1996) (citing *Hudson v.*

> *Palmer*, 468 U.S. 517, 535, 104 S. Ct. 3194, 82 L. Ed.2d 393 (1984)). . . .
> [T]he availability of an Article 78 proceeding under New York's Civil Practice
> Law and Rules [is] sufficient to satisfy [the] right to due process. *See
> Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 881 (collecting cases
> holding that Article 78 provides an adequate post-deprivation remedy).

*Byrne v. Ceresia*, 503 Fed. Appx. 68, 69-70 (2d Cir. Nov. 20, 2012).

Inasmuch as Plaintiff does not, and cannot, allege a lack of adequate recourse under State law, he cannot present a plausible federal due process claim involving a denial of a promotion. Accordingly, Plaintiff's due process "denial of promotion" claim is dismissed with prejudice.

### c. __Breach of Contract__

In Plaintiff's "Fourth Claim" (Am. Compl., ¶¶103-109), he seeks damages for a supposed breach of contract. He contends that LaBarge broke a contractual obligation from the settlement of the 2009 disciplinary proceeding by failing to put a disciplinary letter of reprimand and Plaintiff's rebuttal letter in his personnel file, and instead issuing an email that was placed in Plaintiff's file. *Id.*

Even if the settlement agreement can be regarded as a "contract," Plaintiff does not allege that LaBarge bore responsibility for enforcing it, or had any control over his personnel file. Moreover, the Amended Complaint establishes that LaBarge was acting on behalf of the DDSO in the disciplinary proceeding in which the supposed contract arose. It is well settled that when an agent acts on behalf of a disclosed principal, the agent will not be personally liable for a breach of the contract, unless there is clear and explicit evidence of the agent's intention to be bound. *See Savoy Record Co. v. Cardinal Exp. Corp.*, 15 N.Y.2d 1, 4 (1964); *Lerner v. Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2,

5 (2d Cir. 1991)(applying New York law).  The Amended Complaint contains no allegations suggesting that LaBarge was acting on her own behalf or that she intended to be bound to any contract with Plaintiff.[7]  Thus, assuming the settlement agreement  is enforceable as a contract, LaBarge is not liable for its breach. *See EQT Infrastructure Ltd. v. Smith*, 861 F. Supp. 2d 220, 232 (S.D.N.Y. 2012) (dismissing contract claim against agent of disclosed principal where plaintiff failed to allege that the agent intended to be bound by agreement in his individual capacity).  Accordingly, the breach of contract claim is dismissed with prejudice.

### d.    Defamation

In Plaintiff's "Fifth Claim" (Am. Compl. ¶¶111-117),  he seeks damages for New York State common law defamation against LaBarge.  The allegations concern LaBarge's October 12, 2011 email (the LaBarge Memo). *See* Am. Compl. ¶¶ 112-116.[8]

---

[7]Indeed, the LaBarge Memo indicates that LaBarge did not believe that the consent agreement accurately represented what was agreed to by the parties. (Am. Compl. ¶ 31 ("I just received a copy of Mr. Monsour's settlement and am dismayed and disappointed that it is not what the Capital District DDSO agreed to when these negotiations were being discussed.")).

[8]Plaintiff alleges:

112. As set forth above, Defendant LaBarge drafted and caused to be included in Plaintiff's Personnel File the false and malicious statement that Plaintiff was charged with "abuse" of a developmentally disabled individual. Moreover, Defendant LaBarge explicitly expressed a desire to make such accusation accessible to the public under FOIL. LaBarge's memorandum defaming Plaintiff was available for review whenever he applied for a job or promotion. The statement that Plaintiff, a developmental aide, abused individuals with disabilities, who rely on him for their security, safety and care, is defamation per se.

113. Upon information and belief, Plaintiff's applications for two promotions, for which he was the highest scoring and/or most senior qualified individual, were denied because decision makers accessed and reviewed Plaintiff's personnel history file and saw, read and were influenced by LaBarge's false and malicious memorandum.

114.  As a director of labor relations, LaBarge knew full well the impact her false accusation would have on Plaintiff's career at OPWDD.

(continued...)

20

Defendants argue that the claim must be dismissed because (1) it is barred by the applicable statute of limitations, and (2) LaBarge made the comments within the scope of her official duties and, therefore, is immune from liability. Plaintiff opposes both grounds. The Court need only address the statute of limitations.

### 1. Statute of Limitations

Defendants argue that the defamation claim accrued, and should be measured from, the date that LaBarge transmitted her email on October 12, 2011. *See* Am. Compl. ¶ 31. Thus, Defendants contend that because the allegedly defamatory statement was published more than one year before this action was commenced, it is time barred. Plaintiff argues that while the email was originally sent more than one year before commencement of this action, it is still in his personnel file and, therefore, "LaBarge is not only liable for damages stemming from the initial transmission, but remains liable for each and every transmission thereafter." Pl. Mem. L. p. 21.

Under New York law, the statute of limitation for a defamation claim is one year. *See* N.Y. CPLR §215(3). This time period is measured from the date of the original publication or utterance of the allegedly defamatory statement, *Nussenzweig v. diCorcia,* 9 N.Y.3d 184, 188 (2007); *see Wilson v. Erra*, 94 A.D.3d 756, 756 (2nd Dept. 2012)("A cause

---

[8](...continued)
115. Moreover, as a representative of OPWDD at Plaintiff's arbitration, Defendant LaBarge knew that the Arbitrator had ruled that the charge in the Notice of Discipline did not include any mention of abuse. . . .

116. LaBarge was so intent on maligning Plaintiff that she violated the Arbitrator's orders and the Contract to malign Plaintiff in the eyes of his employers and anyone in the public who obtained her memorandum through a FOIL request.

Am. Compl. ¶¶ 112-116.

of action alleging defamation accrues at the time the alleged statements are originally uttered."), not from when a claimant first acquires knowledge of the statement. *Knoll v. Merrill Corp.*, No. 02 Civ 566 (CSH), 2003 WL 22682271, at *3 (S.D.N.Y. Nov. 13, 2003). "Furthermore, there is no support for plaintiff's proposition that the statute of limitations governing actions for defamation is subject to a 'continuing tort' exception." *Cheves v. Trustees of Columbia University*, 89 A.D.3d 463, 464 (1st Dept. 2011). While "each separate act of [defamation] in a series is in and of itself a distinct and complete wrong and constitutes a different cause of action," *Knoll*, 2003 WL 22682271, at *4, Plaintiff has not alleged that LaBarge published separate and distinct defamatory statements, but only that the originally published e-mail remained in his personnel file. This fails to establish separate acts of publication. Therefore, the cause of action accrued on October 12, 2011. Because this action was not commenced until March 25, 2013, the clam against LaBarge for defamation is dismissed with prejudice.

### e. Retaliation under the Federal and New York State False Claims Acts

Plaintiff brings retaliation claims under the so-called "whistleblower" provisions of the federal False Claims Act ("FCA"), 31 U.S.C. § 3730(h), and the New York False Claims Act ("NYFCA"), N.Y. State Finance Law § 191. However, an individual may not be sued under § 3730(h) or Section 191,[9] either in an individual or official capacity; liability may only be imposed on employers. *See Fisch v. New Heights Academy Charter Sch.*, No. 12-cv-2033, 2012 WL 4049959, at *4 (S.D.N.Y. Sep. 13, 2012); ("Section 3730(h)

---

[9]Section 191 "is essentially identical in language and substance to its federal counterpart," *Forkell v. Lott Assisted Living Corp.,* No. 10-cv-5765, 2012 WL 1901199, at *14 (S.D.N.Y. May 21, 2012), and "courts interpret [the former] by closely tracking judicial interpretation of [the latter]." *Landfield v. Tamaeres Real Estate Holdings, Inc.,* No. 11-cv-105149, 2012 WL 3135052, at *6 (N.Y. Sup. Ct. Jul. 23, 2012).

imposes liability only on employers."); *Aryai v. Forfeiture Support Assocs., LLC,* No. 1:10-cv-08952, 2012 U.S. Dist. LEXIS 125227, at *12-13 (S.D.N.Y. Aug. 27, 2012) ("section 3730(h) does not apply to individuals"); *U.S. ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ.,* 451 F. Supp. 2d 613, 624-25 (S.D.N.Y. 2006) (holding that "only employers can incur liability under § 3730(h)"); N.Y. State Fin. Law § 191(1).[10]

Plaintiff's reliance on a 2009 amendment to § 3730(h) that deleted the word "employer" from the statute for the proposition that individual liability now exists is misplaced. Courts in this Circuit have recognized that this amendment did not evidence Congress's intent to add individual liability for a violation of the retaliation provisions of the FCA. *See, e.g., Aryai v. Forfeiture Support Assoc., LLC,* No. 1:10-cv-8952, 2012 U.S. Dist. LEXIS 125227, at *19–27 (S.D.N.Y. Aug. 27, 2012) (discussing the change in statutory language and finding that when Congress deleted "employer" from the FCA it did not mean to add individual liability for a violation of the retaliation provision). The only contrary decision in this Circuit, *U.S. ex rel. Moore v. Cmty. Health Servs., Inc.,* No. 3:09- cv-1127, 2012 WL 1069474, at *9 (D. Conn. Mar. 29, 2012), contains a "one sentence analysis" that has been rejected both within and outside this Circuit. *See, e.g., Fisch v. New Heights Acad. Charter Sch.,* No. 12-cv-2033, 2012 WL 4049959, at *4 (S.D.N.Y. Sept. 13, 2012)

---

[10]The relevant provision of the NYFCA provides as follows:

Any current or former employee, contractor, or agent of any private or public employer who is discharged, demoted, suspended, threatened, harassed or in any other manner discriminated against in the terms and conditions of employment, **or otherwise harmed or penalized by an employer, or a prospective employer**, because of lawful acts done by the employee, contractor, agent, or associated others in furtherance of an action brought under this article or other efforts to stop one or more violations of this article, shall be entitled to all relief necessary to make the employee, contractor or agent whole. . . .

N.Y. State Fin. Law § 191(1) (emphasis added).

(noting existence of *Moore,* but holding nonetheless that "Section 3730(h) imposes liability only on employers"); *Elkharwily v. Mayo Holding Co.,* No. 12-cv-3062, 2013 WL 3338731, at *4 (D. Minn. Jul. 2, 2013) (declining to follow *Moore,* noting that it had "conclude[ed]—in one single sentence analysis—that omission of the word "employer" created individual liability"). This Court likewise finds that the 2009 amendment did not evidence Congress's intent to expand § 3730(h) beyond employers. Accordingly, LaBarge is not subject to suit under this provision. Moreover, Section 191(1) of the NYFCA includes the word "employer" and, as such, unambiguously precludes liability attaching to individual defendants.

Thus, Plaintiff's Sixth and Seventh Claims against LaBarge must be dismissed. Because better pleading could not cure the deficiencies with these claims, the claims are dismissed with prejudice.

## V.    CONCLUSION

For the reasons discussed above, Defendants OPWDD and LaBarge's motion to dismiss the claims against them, (dkt. # 21), is **GRANTED IN PART AND DENIED IN PART**.  All claims in this action against OPWDD and LaBarge, *except* the First Amendment retaliation claim against LaBarge on the theory of denial of promotions, are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated:March 12, 2014

Thomas J. McAvoy
Senior, U.S. District Judge

24