**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**JEFFREY MONSOUR,**

                       **Plaintiff,**

    -against-                                       1:13-CV-0336 (TJM)(CFH)

**THE NEW YORK STATE OFFICE FOR
PEOPLE WITH DEVELOPMENTAL
DISABILITIES, JAMES INTRONE, and
CATHY LABARGE,**

                       **Defendants.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**THOMAS J. McAVOY**
**Senior United States District Judge**

## DECISION & ORDER

### I. INTRODUCTION

Plaintiff JEFFREY MONSOUR ("Plaintiff") commenced this action against THE NEW YORK STATE OFFICE FOR PEOPLE WITH DEVELOPMENTAL DISABILITIES ("OPWDD"), JAMES INTRONE ("Introne"), and CATHY LABARGE ("LaBarge"). Presently before the Court is Defendant Introne's motion to dismiss the claims against him. (Motion, dkt. # 22).

Plaintiff asserts claims against Introne pursuant to 42 U.S.C. § 1983 (First Amendment retaliation), state law (breach of contract); the federal False Claims Act, 31 U.S.C. § 3730(h); and New York's False Claims Act, N.Y. State Fin. Law § 191. Introne moves to dismiss these claims pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Plaintiff opposes the motion, and Introne has filed a Reply. The Court has considered each of these in arriving at its conclusions set forth below.

1

## II. STANDARDS OF REVIEW

### a. Amended Pleading

Plaintiff filed an Amended Complaint after Defendant filed his motion to dismiss. Inasmuch as the Amended Complaint supersedes the original Complaint, and both parties having addressed their arguments to the allegations in the Amended Complaint, the Court will address the sufficiency of the Amended Complaint.

### b. Fed. R. Civ. P. 12(b)(1)

A motion brought pursuant to FED. R. CIV. P. 12(b)(1) challenges the subject matter of the Court to address a case or certain claims in the case. A case is to be dismissed for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States*, 201 F. 3d 110, 113 (2d Cir. 2000). A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *See Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002); *see also Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996). When a defendant moves to dismiss claims pursuant to Fed. R. Civ. P. 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Medical Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993). For the purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true." *Id.*

Both the movant and pleader may use affidavits and other pleading materials to support or oppose a motion to dismiss for lack of subject matter jurisdiction. *See Makarova*, 201 F.3d at 113; *Filetech S.A. v. France Telecom, S.A.*, 157 F.3d 922, 932 (2d

Cir. 1998); *John Street Leasehold, LLC v. Capital Mgt. Res., L.P.*, 154 F. Supp. 527, 533 (S.D.N.Y. 2001). Further, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Gunst v. Seaga,* No. 05 Civ 2626 DAB, 2007 WL 1032265, at *2 (S.D.N.Y. March 30, 2007) (quoting *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129 (2d Cir. 1998)). "Thus, the standard used to evaluate a Rule 12(b)(1) motion is similar to that used for summary judgment under Fed. R. Civ. P. 56." *Lopresti v. Merson*, 2001 WL 1132051, at *5 (S.D.N.Y. Sept. 21, 2001).

### c. 12(b)(6)

On a motion to dismiss, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. BACKGROUND[1]

### a. Factual Background

Plaintiff has been employed by the New York State Office for People with Developmental Disabilities ("OPWDD") for fourteen years. (Am. Compl. ¶ 3.) During

---

[1] For purposes of this motion, the Court accepts as true the well-pleaded allegations of the Amended Complaint.

that time, Plaintiff has complained about the treatment of individuals with disabilities in OPWDD's care and become an outspoken advocate for the disabled. (*Id.* ¶¶ 3, 10, 43-53, 57, 59, 63-68, 78.)

In 2009, Capital District Developmental Disabilities Services Office ("DDSO") issued a Notice of Discipline to Plaintiff regarding an incident involving a co-worker and a OPWDD consumer. (*Id*. ¶¶ 4, 20, 23.) Plaintiff was also temporarily reassigned as a result of the incident. (*Id*. ¶ 21.) Plaintiff challenged the charge of misconduct, resulting in arbitration ("NOD Arbitration"). (*Id.* ¶¶ 4, 24-25.) Defendant Cathy LaBarge, Director of Labor Relations of OPWDD, participated in the NOD Arbitration on behalf of the DDSO. (*Id*. ¶¶ 19, 25.)

On September 30, 2011, the parties settled the NOD Arbitration, resulting in a stipulated Consent Award. (*Id*. ¶ 26.) As agreed by the parties, Plaintiff received a letter of reprimand, which indicated that it would remain in his personnel file for eighteen months, together with the Notice of Discipline, the Consent Award and Plaintiff's rebuttal letter. (*Id*. ¶ 27.)

Thereafter, Plaintiff requested a copy of his personnel file. In it he found the Notice of Discipline with an e-mail attached, dated October 12, 2011, from Defendant LaBarge to certain OPWDD and DDSO employees (the "LaBarge Memo"). According to Plaintiff, the LaBarge Memo contained falsehoods that may have resulted in him being denied "two opportunities for promotion, even though he was the most qualified applicant." (*Id*. ¶ 75; *see id.* ¶¶ 5, 32, 40.)

On May 7, 2012, Governor Cuomo and Mr. Introne, the former Deputy Secretary for

4

Health and Director of Healthcare Redesign,[2] met with Michael Carey, whose autistic son died while in the care of OPWDD and has since become an outspoken advocate for disabled children and adults. (*Id.* ¶ 61.) During that meeting, Mr. Carey requested that Governor Cuomo ensure Plaintiff was transferred away from OPWDD's hostile work environment. (*Id.* ¶¶ 7, 61.) Governor Cuomo, in turn, asked Mr. Introne to oversee the transfer. (*Id.* ¶¶ 7, 61.) Plaintiff met with Mr. Introne in November 2012. According to Plaintiff, Mr. Introne indicated that he would find a "suitable position" for Plaintiff. (*Id.* ¶ 62.) The following month, however, Mr. Introne advised Mr. Carey, in writing, that Plaintiff "ha[d] decided to continue in his present position . . . ." (*Id.* ¶ 70.)

By letter dated February 12, 2013 to Governor Cuomo, Mr. Carey again raised concerns about Plaintiff's work environment, as well as his mental state, and denied the accuracy of Mr. Introne's prior suggestion that Plaintiff wanted to continue in his present position. (*Id.* ¶ 72.) Plaintiff alleges that, to date, he has not received a "reasonable employment offer from the state." (*Id.* ¶ 62.) Plaintiff also asserts, in conclusory fashion, that Mr. Introne "retaliated" against him for "whistleblowing activities" by failing to: (1) provide another employment opportunity; and (2) eliminate hostility at OPWDD. (*Id.* ¶¶ 74, 75, 77, 93, 120, 125.)

### B. Procedural Background

On March 25, 2013, Plaintiff commenced this action against Mr. Introne and Ms. LaBarge, in their official capacities, and OPWDD, seeking compensatory and punitive damages and attorney's fees and costs. In his initial complaint, Plaintiff asserted nine

---

[2]Mr. Introne has retired from these positions.

5

claims, seven of which were asserted against Mr. Introne in his official capacity, including claims for violation of 42 U.S.C. § 1983 (First Amendment retaliation, violation of equal protection, and wrongful discharge in violation of the Fifth Amendment), breach of contract, violation of New York Civil Service Law § 75-b, and violations of the federal and New York State false claims acts.

All defendants moved to dismiss the initial complaint on July 5, 2013. In lieu of a response to the motions, Plaintiff filed the Amended Complaint on July 25, 2013. In the Amended Complaint, Plaintiff sets forth seven claims, the following four of which are asserted against Introne in both his individual and official capacities:

-First Claim: First Amendment retaliation, pursuant to 42 U.S.C. § 1983;

-Second Claim: Breach of Oral Contract;

-Sixth Claim: Violation of anti-retaliation provision of the federal False Claims Act, 31 U.S.C. § 3730(h); and

-Seventh Claim: Violation of anti-retaliation provision of New York's False Claims Act, N.Y. State Fin. Law § 191.

Plaintiff seeks compensatory damages; punitive damages; attorneys fees and costs; an order "referring the underlying civil rights allegations to the United States attorney for investigation/prosecution;" and an order "removing [plaintiff] from the hostile work environment, and placing him in a comparable replacement position." Am. Compl. pp. 32-33.

By Order dated July 31, 2013, the Court granted defendants leave to file memoranda of law in support of their motions in light of the filing of the Amended Complaint. Introne contends that the Court should dismiss the Amended Complaint in its

6

entirety and with prejudice as to him. Plaintiff has opposed this motion, and Introne has replied.

**IV. DISCUSSION**

### a. Sovereign Immunity

Introne moves to dismiss the claims against him based upon Eleventh Amendment immunity. The Eleventh Amendment serves as a jurisdictional bar to suits against a state agency regardless of the nature of the relief sought, including suits in equity. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984); *Green v. Mansour*, 474 U.S. 64, 72-73 (1985); *see also Komlosi v. New York State Office of Mental Retardation and Developmental Disabilities*, 64 F.3d 810 (2d Cir. 1995)(OMRDD is an arm of the state and is immune under the Eleventh Amendment). "To the extent a state official is sued for damages in his or her official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Rourke v. N.Y.S. Dep't of Corr. Servs.* 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (McAvoy, J.) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir. 1993), *cert. denied,* 510 U.S. 1073 (1994); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993)).

A narrow exception to this immunity allows a federal court to issue an injunction against a state official in his or her official capacity who is acting contrary to federal law. *Ex Parte Young*, 209 U.S. 123 (1908); *see Pennhurst*, 465 U.S. at 102; *New York Health and Hospitals Corporation et al. v. Perales*, 50 F.3d 129 (2d Cir. 1995). This exception is a limited one, utilized only "when there is a specific conflict between the federal mandate

7

and the state plan or practice that a federal right is implicated," *Doe v. Pfrommer*, 148 F. 3d 73, 80-81 (2d Cir. 1998), and is authorized to "vindicate the supremacy of [federal] law." *Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir. 2000). [3]

To the extent the claims against Introne in his official capacity seek monetary damages, they must be dismissed under the Eleventh Amendment.  Moreover, despite that Plaintiff seeks what could be construed as prospective injunctive relief, there is no dispute that Introne has retried and is no longer a state official.  Thus , he no longer has any "official capacity" and any suit seeking prospective relief against him is not cognizable. *See Roniger v. McCall*, 22 F. Supp. 2d 156, 161 (S.D.N.Y. 1998) (dismissing claim against former state official sued in "official capacity").  Moreover, Plaintiff does not allege – nor can he allege – that Mr. Introne has the authority to transfer Plaintiff from his current position to a "comparable replacement position" with the State. Thus, all claims against Introne in his official capacity must be dismissed.

To the extent the parties argue whether the Eleventh Amendment applies to the claims brought against Introne in his individual capacity, the arguments are academic because, as discussed below, each claim lacks substantive merit.

### b. Section 1983 - First Amendment Retaliation

To state a claim under 42 U.S.C. § 1983, a plaintiff must show that: (1) the defendant official acted under "color of state law"; and (2) his or her conduct or actions

---

[3] The Supreme Court has held that "[i]n determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland Inc. v. Public Serv. Comm. Of Maryland,* 122 S. Ct. 1753, 1760 (2002)(quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 296 (1997)(O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment). The inquiry "does not include an analysis of the merits of the claim." *Id*. at 1761.

8

deprived plaintiff of a right, privilege, or immunity guaranteed by the Constitution or laws of the United States. *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). The Supreme Court has made clear that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citing cases). It is well-established that a high-ranking official, such as Introne, may not be held liable for damages for constitutional violations merely because he once held a high position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

Plaintiff has expressly disclaimed any reliance on a supervisor theory of liability, (Pl's Br. at 13), and thus is required to show that Introne directly participated in the violation of Plaintiff's constitutional rights. *See Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001). To state a prima facie case of First Amendment retaliation under § 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech at issue was constitutionally protected; (2) the defendant took adverse employment action against the plaintiff; and (3) there was a causal connection between the speech and the adverse employment action so that it can be said that the speech was a motivating factor in the determination. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Washington v. Cnty. of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004). Adverse

9

employment actions may include both harsh and less severe sanctions, including discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand. *See Phillips v. Bowen,* 278 F.3d 103, 109 (2d Cir. 2002). But only retaliatory conduct sufficient to "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights" constitutes adverse action taken. *Zelnik v. Fashion Inst. of Tech.,* 464 F.3d 217, 225 (2d Cir. 2006) (internal quotation marks omitted).

Plaintiff fails to plead a plead a plausible First Amended retaliation claim against Introne. First, Introne had no power or authority to "remedy" Plaintiff's working environment at OPWDD. Introne did not work in or for OPWDD, which is an "autonomous agency" headed by its commissioner. N.Y. Mental Hyg. Law §§ 13.01 (establishing OPWDD as "a new autonomous agency"), 13.03(2) (defining the commissioner as "the head of the office for people with developmental disabilities"). It is the commissioner that is statutorily vested with "the professional jurisdiction, supervision, and control of [OPWDD]," *id.* § 13.11(a), as well as the legal authority to "appoint and remove . . . [OPWDD's] . . . officers and employees . . . ," *id.* § 13.19. By contrast, no law, rule or regulation conferred on Mr. Introne legal authority to exercise supervisory authority or make personnel decisions at OPWDD. *See generally,* N.Y. Civ. Serv. Law § 2(9) (defining "appointing authority" or "appointing officer" for purposes of N.Y. Civ. Serv. Law to mean an "officer, commission or body having the power of appointment to subordinate positions"); 19 N.Y.C.R.R. §935.1(b) (defining "appointing authority" for purposes of New York State Ethics Law to "mean that individual or body that has the authority by law, rule or regulation to appoint a person to a position, or that individual or body to whom such

authority may be properly delegated by law, rule or regulation").

Second, Plaintiff alleges merely that Introne did not find him "suitable" employment before retiring, but this falls short of establishing that Introne took any actionable adverse employment action that would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Zelnik v. Fashion Inst. of Tech.,* 464 F.3d 217, 225 (2d Cir. 2006) (internal quotation marks omitted). While Plaintiff has remained in his current position, the Amended Complaint fails to allege any adverse consequences resulting from this continued employment or that Introne took any action that have prevented Plaintiff from himself finding another position into which he could have transferred. Nor does the Amended Complaint provide factual support for Plaintiff's conclusory assertions of working in a "hostile work environment."

Third, conclusory labels aside (Pl's Br. at 15 (citing Amend. Compl. ¶¶ 74, 77, 79, 92)), the Amended Complaint is devoid of facts showing that Introne acted with discriminatory animus toward Plaintiff on account of Plaintiff's speech. *See Iqbal*, 556 U.S. at 681 (holding allegations were insufficient to state § 1983 claim where Plaintiff's allegations were merely consistent with discriminatory intent, but did "not plausibly establish this purpose"); *id.* at 686 (holding conclusory allegations of motivation are insufficient).

Thus, because Plaintiff has failed to "nudge" his First Amendment retaliation claim against Introne "across the line from conceivable to plausible," the claim must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Inasmuch as Plaintiff cannot establish that Introne had the authority to transfer Plaintiff, and has failed to allege,

11

despite filing an amended complaint after Defendants'[4] motions to dismiss, facts plausibly indicating that Introne took action to prevent Plaintiff's transfer or was motivated in his alleged omission by Plaintiff's speech, the dismissal is with prejudice.

### c. Breach of Contract

Plaintiff claims in the Amended Complaint that an enforceable oral contract was formed when Governor Cuomo, at the request of Michael Carey, asked Introne to find Plaintiff another job. Plaintiff further alleges that Introne violated this oral contract when he later stated that Plaintiff did not want to transfer jobs, and when Introne failed to find Plaintiff a suitable alternative position.

Under New York law,[5] to establish a triable breach of contract claim Plaintiff must set forth evidence of: 1) the existence of a contract between the parties; 2) adequate performance of that contract by Plaintiff; 3) breach of the contract by Defendant; and 4) damages. *Eternity Global Master Fund Ltd. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). A breach of contract "claim that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (internal citations and citation omitted).

Proof of the existence of a contract requires proof of an "offer, acceptance, consideration, mutual assent and intent to be bound" by the parties. *Leibowitz v. Cornell*

---

[4]The others defendants also filed a motion to dismiss before Plaintiff filed his Amended Complaint.

[5]Because both parties have relied on New York law in their memoranda of law, they have implicitly consented to the application of New York law. This "'implied consent ... is sufficient to establish choice of law.'" *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (*quoting Tehran–Berkeley Civil & Envtl. Eng'rs v. Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir.1989)).

*Univ.*, 584 F.3d 487, 507 (2d Cir. 2009). Plaintiff has alleged no facts that would support these elements.

"An offer is a 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Cacchillo v. Insmed, Inc.*, No. 1:10-cv-1199, 2013 WL 622220, at *14 n.41 (N.D.N.Y. Feb. 19, 2013)(McAvoy, S.J.)(quoting Restatement (Second) of Contracts § 24 (1981)), *aff'd* --- Fed. Appx. ----, 2014 WL 43891 (2d Cir. Jan. 07, 2014); *accord Concilla v. May*, 214 A.D.2d 848, 849 (3d Dep't 1995). Introne's statement that he "would find a suitable position for Mr. Monsour," is, at best, a gratuitous statement of future intention, and not a binding offer. Introne's statement lacks the definiteness and certainty of a legally enforceable offer. Under New York law, to be enforceable, a promise "must be sufficiently certain and specific so that what was promised can be ascertained." *Martin v. Schumacher*, 52 N.Y.2d 105, 109 (1981); *see also Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 482 (1989) ("Few principles are better settled in the law of contracts than the requirement of definiteness. If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract."). Here, the alleged promise is not reasonably certain in its material terms, including, for example, the type of position that might be "suitable" for Plaintiff, and the time for Introne's performance and Plaintiff's acceptance. Similarly, Plaintiff has failed to allege his own acceptance, in word or deed, of the purported offer.

Plaintiff has also failed to identify or otherwise allege any consideration in exchange for Introne's purported promise. *See Weiner v. McGraw–Hill, Inc.*, 57 N.Y.2d 458, 464

13

(1982)(All contracts must be supported by consideration, consisting of "a benefit to the promisor or a detriment to the promisee.") (citing *Holt v. Feigenbaum*, 52 N.Y.2d 291, 299 (1981)). Plaintiff has alleged no benefit to Introne in making a "promise" to find Plaintiff another job. To the contrary, Plaintiff alleges that Introne was directed to find him a new job by Governor Cuomo. (Am. Compl. ¶¶ 61, 74.)

Nor has Plaintiff alleged that anything was "promised, done, forborne or suffered" by him as consideration for the promise purportedly made to him. *Weiner*, 57 N.Y.2d at 464 (interior quotation marks and citation omitted). Plaintiff has not alleged that he has refrained from doing that which he had a legal right to do, or that he performed any act that he was otherwise not legally required to perform. Accordingly, the putative oral promise is unsupported by consideration and unenforceable.

Moreover, Plaintiff has alleged no facts suggesting there was mutual assent or intent to be bound by either party to the alleged oral contract. *See Express Indus. & Terminal Corp. v. N.Y.S. Dep't of Transp.*, 693 N.Y.S.2d 857, 860 (1999)(In order for a contract to be enforceable, there must be a "manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."). "The unilateral understandings of one party, no matter how subjectively reasonable, are insufficient to form the basis of a contractual promise." *See Suthers v. Amgen Inc.*, 372 F. Supp. 2d 416, 424 (S.D.N.Y. 2005) (citing *Di Giulio v. City of Buffalo*, 237 A.D.2d 938, 939 (4th Dep't 1997)); *see also I.G. Second Gen. Partners, L.P. v. Duane Reade*, 17 A.D.3d 206, 208 (1st Dep't 2005) (holding that there must be a meeting of the minds to have a valid, enforceable contractual obligation). Here, Plaintiff

has alleged no facts suggesting that he or Introne agreed or intended to be bound by contract.

In addition, Plaintiff has failed to allege causation and damages stemming from the purported breach. Nowhere in the Amended Complaint does Plaintiff identify any out-of-pocket losses. There is no allegation that he was promised a higher paying job, only that he was promised "another well-paying job." (Am. Compl. ¶ 61.) While Plaintiff alleges that he has suffered psychological damages and emotional distress generally, (*id*. ¶ 87), he fails to tie these purported injuries to the alleged breach of oral contract. But even if he did, the general rule in New York is that no right of recovery exists for mental distress resulting from a breach of contract. *Wehringer v. Standard Sec. Life Ins. Co.*, 57 N.Y.2d 757, 759 (1982).

Finally, the Amended Complaint establishes that Introne was acting on behalf of a disclosed principal, and therefore he is not liable to Plaintiff based on a purported contract to obtain a "reasonable employment offer from the state." (Am. Compl. ¶¶ 61-62.) It is well settled that when an agent acts on behalf of a disclosed principal, the agent will not be personally liable for a breach of the contract, unless there is clear and explicit evidence of the agent's intention to be bound. *See Savoy Record Co. v. Cardinal Exp. Corp.*, 15 N.Y.2d 1, 4 (1964); *Lerner v. Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2, 5 (2d Cir. 1991)(applying New York law). The Amended Complaint states only that Introne made his statement as a result of being directed by his supervisor "to find Mr. Monsour another job out of OPWDD." (Am. Compl. ¶ 61.) There are no allegations suggesting that Introne was acting on his own behalf or that he intended to be

15

bound to any contract with Plaintiff. Moreover, even assuming the putative agreement was enforceable, Introne is not liable for its breach. *See EQT Infrastructure Ltd. v. Smith*, 861 F. Supp. 2d 220, 232 (S.D.N.Y. 2012) (dismissing contract claim against agent of disclosed principal where plaintiff failed to allege that the agent intended to be bound by agreement in his individual capacity). Thus, Plaintiff fails to allege a plausible breach of contract claim in the Amended Complaint.

However, Plaintiff argues in his opposition memorandum of law that despite "the name he gave the cause of action," he has alleged a viable claim for promissory estoppel. But, it is well settled that "[a] party may not defeat a motion to dismiss a contract claim . . . by recasting the claim as one for promissory estoppel." *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 322 (S.D.N.Y. 2012); *see, e.g., Butvin v. DoubleClick, Inc.,* No. 99-cv-4727, 2000 WL 827673, at *13 (S.D.N.Y. June 26, 2000) (dismissing plaintiff's promissory estoppel claim where, as here, it was first raised in his brief filed in opposition to the defendant's motion to dismiss); *R.C. Congel v. Crownline Boats, Inc.*, No. 00-cv-0149, 2000 WL 1610781, at *4 (N.D.N.Y. Oct. 10, 2000) (rejecting assertion of promissory estoppel claim raised in brief because such a claim, "like any other claim, . . . must be pleaded according to the Federal Rules of Civil Procedure"). Simply stated, Plaintiff cannot replead claims in his memorandum of law.

Nevertheless, even if Plaintiff were permitted to amend the Amended Complaint to assert a claim for promissory estoppel, the claim would fail. "To make out a claim for promissory estoppel, a plaintiff must prove (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the promisee; and (3) an unconscionable injury to

the relying party as a result of the reliance." *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996) (applying New York law).

The "promise" alleged by Plaintiff is merely Introne's statement that "he would find a suitable position for Mr. Monsour." (Amend. Compl. ¶ 62.) Plaintiff does not allege that there was any discussion of the term "suitable" or the time frame in which Introne would find such a position. Such a vague, indefinite statement is insufficient as a matter of law. *See, e.g., Ogindo v. DeFleur*, No. 07-cv-1322, 2008 WL 5105153, at *8 (N.D.N.Y. Oct. 16, 2008) (McAvoy, J.) (dismissing promissory estoppel claim where complaint failed to identify any clear and unambiguous promises upon which plaintiff reasonably could rely); *Keough v. Texaco, Inc.*, No. 97-cv-5981, 1999 WL 61836 *9-10 (S.D.N.Y. 1999) (holding promises that employment would be "long-standing" and that plaintiff was "in-line to be the next chief executive officer" were too indefinite as to time to be enforceable under a promissory estoppel theory).

Further, even if Introne had identified a suitable position, Plaintiff would still have to apply and qualify for it.[6] Thus, any reliance by Plaintiff on Mr. Introne's statement as a promise or guarantee of finding a "suitable" new position was unreasonable. *See Ogindo*, 2008 WL 5105153, at *8 (holding reliance on statement that plaintiff "could defend his dissertation in December 2005" not reasonable where plaintiff knew or should have known that his ability to defend would depend on factors outside defendant's control). In any event, the Amended Complaint is devoid of any allegations showing that Plaintiff did, in fact, rely on Mr. Introne's statement. Plaintiff alleges no

---

[6]Plaintiff acknowledges this point in the Amended Complaint, alleging that he has applied for two positions but, for reasons unrelated to Mr. Introne, was not hired to fill them. (Amend. Compl. ¶ 75.)

17

forbearance or any affirmative action on his part at all. Plaintiff's allegations that he remains in his current position, he "repeatedly asked" to be transferred, and his current work environment is somehow "dangerous" and getting worse, (Pl's Br. at 16 (citing Amend. Compl. ¶¶ 8, 71, 72)), do not establish reliance.

Also, the Amended Complaint lacks allegations suggesting that Plaintiff's purported reliance "resulted in some prejudicial change in his position." *Tierney v. Capricorn Investors, L.P.*, 189 A.D.2d 629, 632 (1st Dep't 1993) (internal quotations and citation omitted). While Plaintiff alleges that his work environment is getting worse, that he has been placed on administrative leave, and he has suffered economic and psychological harm, (Pl's Br. at 16 (citing Amend. Compl. ¶¶ 72, 77, 82, 87)), none of these alleged injuries stem from Plaintiff's reliance on anything done or said by Introne. Rather, they are the result of the independent actions of others.

Accordingly, Plaintiff's Second Claim is insufficient as a matter of law and must be dismissed. Because Plaintiff has failed to put forth a plausible breach of contract or equitable estoppel claim despite having formally amending his complaint once and, by argument, a second time, it is clear that he cannot allege sufficient facts to present a plausible claim in this regard. Accordingly, the Second Claims against Introne is dismissed with prejudice.

### d. Retaliation under the Federal and New York State False Claims Acts

Plaintiff brings retaliation claims under the so-called "whistleblower" provisions of the federal False Claims Act ("FCA"), 31 U.S.C. § 3730(h), and the New York False Claims Act ("NYFCA"), N.Y. State Finance Law § 191. However, an individual may not be

18

sued under § 3730(h) or Section 191,[7] either in an individual or official capacity; liability may only be imposed on employers. *See Fisch v. New Heights Academy Charter Sch.*, No. 12-cv-2033, 2012 WL 4049959, at *4 (S.D.N.Y. Sep. 13, 2012); ("Section 3730(h) imposes liability only on employers."); *Aryai v. Forfeiture Support Assocs., LLC,* No. 1:10-cv-08952, 2012 U.S. Dist. LEXIS 125227, at *12-13 (S.D.N.Y. Aug. 27, 2012) ("section 3730(h) does not apply to individuals"); *U.S. ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ.*, 451 F. Supp. 2d 613, 624-25 (S.D.N.Y. 2006) (holding that "only employers can incur liability under § 3730(h)"); N.Y. State Fin. Law § 191(1).[8]

Plaintiff's reliance on a 2009 amendment to § 3730(h) that deleted the word "employer" from the statute for the proposition that individual liability now exists is misplaced. Courts in this Circuit have recognized that this amendment did not evidence Congress's intent to add individual liability for a violation of the retaliation provisions of the FCA. *See, e.g., Aryai v. Forfeiture Support Assoc., LLC,* No. 1:10-cv-8952, 2012 U.S. Dist. LEXIS 125227, at *19–27 (S.D.N.Y. Aug. 27, 2012) (discussing the change in statutory language and finding that when Congress deleted "employer" from the FCA it did not

---

[7]Section 191 "is essentially identical in language and substance to its federal counterpart," *Forkell v. Lott Assisted Living Corp.,* No. 10-cv-5765, 2012 WL 1901199, at *14 (S.D.N.Y. May 21, 2012), and "courts interpret [the former] by closely tracking judicial interpretation of [the latter]." *Landfield v. Tamaeres Real Estate Holdings, Inc.,* No. 11-cv-105149, 2012 WL 3135052, at *6 (N.Y. Sup. Ct. Jul. 23, 2012).

[8]The relevant provision of the NYFCA provides as follows:

Any current or former employee, contractor, or agent of any private or public employer who is discharged, demoted, suspended, threatened, harassed or in any other manner discriminated against in the terms and conditions of employment, **or otherwise harmed or penalized by an employer, or a prospective employer**, because of lawful acts done by the employee, contractor, agent, or associated others in furtherance of an action brought under this article or other efforts to stop one or more violations of this article, shall be entitled to all relief necessary to make the employee, contractor or agent whole. . . .

N.Y. State Fin. Law § 191(1) (emphasis added).

19

mean to add individual liability for a violation of the retaliation provision). The only contrary decision in this Circuit, *U.S. ex rel. Moore v. Cmty. Health Servs., Inc.,* No. 3:09- cv-1127, 2012 WL 1069474, at *9 (D. Conn. Mar. 29, 2012), contains a "one sentence analysis" that has been rejected both within and outside this Circuit. *See, e.g., Fisch v. New Heights Acad. Charter Sch.,* No. 12-cv-2033, 2012 WL 4049959, at *4 (S.D.N.Y. Sept. 13, 2012) (noting existence of *Moore,* but holding nonetheless that "Section 3730(h) imposes liability only on employers"); *Elkharwily v. Mayo Holding Co.,* No. 12-cv-3062, 2013 WL 3338731, at *4 (D. Minn. Jul. 2, 2013) (declining to follow *Moore,* noting that it had "conclude[ed]—in one single sentence analysis—that omission of the word "employer" created individual liability"). This Court likewise finds that the 2009 amendment did not evidence Congress's intent to expand § 3730(h) beyond employers. Accordingly, Introne is not subject to suit under this provision. Moreover, Section 191(1) of the NYFCA includes the word "employer" and, as such, unambiguously precludes liability attaching to individual defendants.

Plaintiff's Sixth and Seventh Claims against Introne must be dismissed. Because better pleading could not cure the deficiencies with these claims, the claims are dismissed with prejudice.

### V. CONCLUSION

For the reasons discussed above, Defendant Introne's motion to dismiss (dkt. # 22) is **GRANTED**, and all claims against Introne are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: March 12, 2014

Thomas J. McAvoy
Senior, U.S. District Judge

20