**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JEFFREY MONSOUR,

                                        Plaintiff,

        vs.                                                        1:13-CV-336
                                                                    (TJM/CFH)

THE NEW YORK STATE OFFICE FOR PEOPLE
WITH DEVELOPMENTAL DISABILITIES,
and CATHY LABARGE,

                                        Defendants.

_____

**APPEARANCES:**                        **OF COUNSEL:**

Sadowski Katz LLP                        RAPHAEL KATZ, ESQ.
11 Broadway, Ste. 615                    ROBERT W. SANDOWSKI, ESQ.
New York, New York 10004
Attorneys for Plaintiff

Office of Attorney General               HELENA LYNCH, ESQ.
The Capitol                              ADRIENNE J. KERWIN, ESQ.
Albany, New York 12224
Attorneys for Defendants

**CHRISTIAN F. HUMMEL,**
**U.S. MAGISTRATE JUDGE**


## MEMORANDUM-DECISION & ORDER

Defendants The New York State Office for People with Developmental

Disabilities ("OPWDD") and Cathy LaBarge collectively move to preclude plaintiff from

having the following witnesses testify at trial: James "Michael" Burns, Michael Carey,

Max E. Chmura, Christine Galvin, Danny Hakim, James Introne, Linda Lacewell, L.P.,

and Jeremy Willett.[1]  Dkt. No. 72.  Plaintiff opposed the motion, and defendants

replied.  Dkt. Nos. 75, 76.  For the following reasons, defendants' motion to preclude is

denied.

## I.  Background

### A.  Procedural History

Plaintiff Jeffery Monsour commenced this action on March 25, 2013 with the

filing of a complaint.  Dkt. No. 1 ("Compl.").  On July 8, 2013, defendants OPWDD and

LaBarge moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction.

Dkt. No. 21.  Defendant James Introne separately moved to dismiss for lack of subject

matter jurisdiction.  Dkt. No. 22.  Plaintiff filed an amended complaint on July 25, 2013.

Dkt. Nos. 23-24.  On July 31, 2013, Judge McAvoy entered an Order adjourning the

motions to dismiss for lack of subject matter jurisdiction, granting defendants leave to

file memoranda of law in support of their motions in light of plaintiff's filing an amended

complaint.  Dkt. No. 25.  On August 9, 2013, defendants filed memorandums of law in

support of their motion to dismiss.  Dkt. Nos. 27, 28.  Plaintiff opposed.  Dkt. Nos. 30-

31.  Defendants filed separate replies.  Dkt. Nos. 32, 33.

On March 12, 2014, District Judge Thomas J. McAvoy granted in part and

denied in part defendants OPWDD and LaBarge's motion, dismissing all claims against

OPWDD and LaBarge with prejudice, except the First Amendment retaliation claim

---

[1]  Defendants also sought to preclude Jane Taylor, but plaintiff "voluntarily agrees to remove Jane Taylor from Plaintiff's witness list."  Dkt. No. 75 at 14.

against LaBarge.  Dkt. No. 35.  In a separate Decision and Order, Judge McAvoy granted defendant Introne's motion to dismiss in its entirety, dismissing all claims raised against him with prejudice.  Dkt. No. 36.

On June 6, 2014, the Court entered a Uniform Pretrial Scheduling Order in this matter.  Dkt. No. 44.  On September 12, 2014, plaintiff filed a motion for leave to file a second amended complaint a proposed second amended complaint.  Dkt. Nos. 50, 51. On September 29, 2014, defendant LaBarge filed a motion in opposition to plaintiff's motion for leave to file a second amended complaint.  Dkt. No. 52.  Plaintiff filed a reply. Dkt. No. 53.  On October 17, 2014, Judge McAvoy granted in part and denied in part plaintiff's motion to file a second amended complaint.  Dkt. No. 56.  The Court granted the motion "with respect to Plaintiff's claims against OPWDD pursuant to the Rehabilitation Act and against Defendant Labarge pursuant to the NYSHRL."  Id. at 10. The Court denied all other claims in the proposed second amended complaint.  Id.  On October 17, 2014, plaintiff filed a second amended complaint.  Dkt. No. 57.  On October 20, 2014, plaintiff filed a corrected second amended complaint.  Dkt. No. 58.

On October 24, 2014, defendants LaBarge and OPWDD requested an extension of the remaining deadlines.  Dkt. No. 60.  On October 27, 2014, the Court set a discovery conference for November 3, 2014.  Id.  At the conference, the Court amended the Uniform Pretrial Scheduling by extending: discovery until May 19, 2015, the motion deadline until July 6, 2015, and the trial date to December 15, 2015.  Dkt. No. 62.  On April 17, 2015, defendants filed a letter motion requesting an extension of the discovery deadline.  On April 20, 2015, the Court granted the request, extending

3

discovery to September 18, 2015 and the motion deadline to November 18, 2015.  Dkt. No. 66.

On September 17, 2015, plaintiff served on defendants a list of thirty-four individuals who he may call as trial witnesses.  Dkt. No. 72-9.  Also on September 17, defendants requested a conference before the undersigned to address witness-related issues.  Dkt. No. 67.  On September 21, 2015, the Court granted the letter request, setting a telephone conference for October 2, 2015.  Dkt. No. 68.  On September 28, 2015, plaintiff filed a response in opposition to defendants' letter request for a telephone conference.  Dkt. No. 69.  In this letter, plaintiff provided a list of thirty-three witnesses along with the proposed subject matter of their testimony.  Id. at 6-8.  On November 2, 2015, defendants filed a letter motion requesting a briefing schedule for a motion to preclude certain witnesses from testifying at trial.  Dkt. No. 70.  Following a conference with all parties, the Court granted the letter request setting a briefing schedule.  Dkt. No. 71.

## B.  Current Dispute

Plaintiff served his first set of requests for the production of documents on July 21, 2014.  Dkt. No. 72-1 at 6.   Plaintiff served initial disclosures pursuant to the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 26(a)(1)(A) on September 25, 2014.  Dkt. No. 72-3; Dkt. No. 75 at 7.  Plaintiff served the initial disclosures even though the parties "agreed to waive Initial Disclosures 'with the understanding that the information required by Rule 26(a)(1)(A) would be disclosed via discovery responses'" because

plaintiff wished "to keep Defendants apprised of all relevant factors." Dkt No. 75 at 6, n.1.[2]  The September 2014 disclosures included a list of seventy-three names, the list included proposed subject matter of the testimony of just two witnesses.  Id.[3]  On October 8, 2014, plaintiff produced his response to defendants' first request for production of documents.  Dkt. No. 75 at 7.  On November 18, 2014, defendants served their first set of interrogatories.  Dkt. No. 72-4.  Defendants next provide that, in response to interrogatory number twenty, which asked plaintiff to "[i]dentify any and all persons with knowledge or information relating to the alleged events described in the Complaint, and for each person identified state the nature of the knowledge or information that person possesses and the nature of Plaintiff's relationship to that person[,]"  Dkt. No. 72-5 at 9, plaintiff answered, "[p]laintiff refers to the notices of deposition, which identifies individuals Plaintiff believes to have knowledge of the events alleged in the complaint.  Plaintiff cannot prior to their deposition anticipate the scope of their factual knowledge."  Dkt. No. 72-5 at 9.

Next, interrogatory number twenty-two asked plaintiff to "[i]dentify any and all persons whom Plaintiff intends to call as a fact witness at the time of trial, and for each person identified, specify the nature of the testimony that the person is expected to provide at trial and the nature of Plaintiff's relationship to that person."  Dkt. No. 72-4 at

---

[2]  Defendants' counsel provides that she was "unable to find a record of having received Plaintiff's Initial Disclosures.  However, Plaintiff's counsel has sent copies of correspondence dated September 25, 2014, demonstrating that those Initial Disclosures were served."  Dkt. No. 72-1 at 6-7 n.1.

[3]  Defendants contend that "[p]laintiff served his Initial Disclosures even though counsel for parties had previously agreed, at Plaintiff's counsel's request, to waive Initial Disclosures and produce the information required by Rule 26(a)(1)(A) in response to discovery demands."  Dkt. No. 7-2 at 2.

9.  In response, plaintiff "object[ed] to this interrogatory in that it is premature.  Plaintiff will list trial witnesses at the appropriate time pursuant to the Federal Rules of Civil Procedure and local rules of the Northern District of New York and the Judge's individual rules and scheduling order."  Dkt. No. 72-5 at 10.

On July 30, 2015, plaintiff provided defendants a "witness list" containing twenty names of individuals who plaintiff and Jane Taylor – the plaintiff in Taylor v. New York State Office of People With Developmental Disabilities, et al., a case that is coordinated with this one for discovery purposes – "plan to call for deposition."  Dkt. No. 72-7 at 1, Dkt. No. 75-11.  This list did not identify these individuals as trial witnesses nor include the proposed subject matter of the individuals' testimony.  Dkt. No. 72-7.  On August 10, 2015, plaintiff provided defendants a second "witness list" with twelve individuals who the plaintiff "plan[ned] to call for deposition."  Dkt. No. 72-8.[4]  This list did not identify these individuals as trial witnesses and did not include the proposed subject matter of their trial testimony.  Id.  On September 17, 2015, plaintiff provided defendants a list of thirty-four potential trial witnesses.  Dkt. No. 72-9.  The list included some titles or identifiers, but did not include the proposed testimony.  Id.  On September 28, 2015, after the close of discovery,[5] in a letter to the Court responding to defendants' request for a conference, plaintiff provided a list of thirty-three witnesses and the general subject matter of their trial testimony.  Dkt. No. 69.

---

[4]  Defendants contest that this list and the July 30, 2015 list failed to apprise them of plaintiff's intent to call these individuals as trial witnesses because the lists merely stated that the individuals were witnesses that plaintiff "plan[ned] to call for deposition" and not that he planned to call the individuals as trial witnesses.  Dkt. Nos. 72-2, 72-8.

[5]  Discovery closed in this matter on September 18, 2015.  Dkt. No. 66.

## II. Review of Present Motion

Defendants seek to preclude plaintiff from having nine witnesses testify at trial due to plaintiff's alleged failure to comply with the Rule 26(a)(1)(A)(i) discovery disclosure deadline and the parties' agreement to provide this information during the course of discovery. Defendants divide the witnesses into two categories – witnesses whose names were disclosed but the subject matter of their testimony was not disclosed – Mr. Burns, Mr. Chmura, Ms. Galvin, and Mr. Introne – and witnesses whose names were not disclosed before September 17, 2015 – L.P.,[6] Jeremy Willett, Linda Lacewell, Danny Hakim, and Michael Carey. Dkt. No. 72-1 at 14. Finally, defendants argue that plaintiff's failure to disclose the identity and subject matter of the witnesses' testimony is not substantially justified or harmless, that defendants are prejudiced by the delay, and that a continuance would be unwarranted.

### A. Legal Standard

Rule 26(a)(1)(A)(i) provides, in pertinent part, that a party must, without awaiting a discovery request, provide to the other parties:

> the name and, if known, the address and telephone number of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment . . . .

FED. R. CIV. P. 26(a)(1)(A)(i). Such information must be disclosed within fourteen days

---

[6] The Court observes that L.P.'s and Mr. Carey's name were first disclosed on July 30, 2015, though, as defendants point out, this witness list stated that plaintiff intended to *depose* those individuals, rather than call them as witnesses at trial. Dkt. No. 72-7.

after the Rule 26(f) discovery conference unless a different time is set by stipulation or court order.  FED. R. CIV. P. 26(a)(i)(C).  Further, Rule 26(e)(1)(A) requires a party to supplement initial disclosures as additional witnesses and evidence become known.  FED. R. CIV. P.  26(e)(1)(A).  The supplementation must be made "in a timely manner . . . if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ."  Id.

Fed. R. Civ. P. 37(c)(1) states, as relevant here,

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless.

"'The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence.'"  Haas v. Del. & Hudson Ry. Co., 282 F. App'x 84, 86 (2d Cir. 2008) (quoting Ebewo v. Martinez, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004)).  "The test of substantial justification is satisfied "if there exists a genuine dispute concerning compliance."'"  Kunstler v. City of New York, 242 F.R.D. 261, 265 (S.D.N.Y. 2007) (citing Henrietta D. v. Giuliani, No. 95 Civ. 0641, 2001 WL 1602114, at *5 (E.D.N.Y. Dec. 11, 2001) (additional citation omitted)).  "The burden of proving substantial justification rests with the party which has failed to disclose information." Id. (citing Henrietta D., 2001 WL 1602114, at *5).

To determine whether evidence should be precluded, a court must consider

> (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the

new testimony; and (4) the possibility of a continuance.

Softel, Inc. v. Dragon Med. and Scientific Communications, Inc., 118 F.3d 955, 961 (2d Cir. 1997) (citation omitted). The Second Circuit has noted that

> [c]onsiderations of fair play may dictate that courts eschew the harshest sanctions provided by Rule 37 where failure to comply is due to mere oversight of counsel amounting to no more than simple negligence. But where gross professional negligence has been found that is, where counsel clearly should have understood his duty to the court the full range of sanctions may be marshalled.

Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1068 (2d Cir. 1979) (internal citation omitted). The Second Circuit has clarified that a showing of bad faith is not required before evidence may be excluded under Rule 37(c)(1), though it may be taken into account. Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006). The Second Circuit has called preclusion an "extreme sanction[,]" advising that district court judges "should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." Outley v. City of N.Y., 837 F.2d 587, 591 (2d Cir. 1988); Hinton v. Patnaude, 162 F.R.D. 435, 439 (N.D.N.Y. 1995) (noting that preclusion is a "drastic remedy" that should be considered only "in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure."). However, "'[d]espite the mandatory nature of Rule 37(c)(1), the Second Circuit has held that preclusion is a discretionary remedy, even if the trial court finds that there is no substantial justification and the failure to disclose is not harmless.'" Leong v. 127 Glen Head Inc., CV 13-5528 (ADS/AKT), 2016 WL 845325, at *3 (E.D.N.Y. Mar. 2, 2016)

9

(quoting Pal v. New York Univ., 06-CV-5892 (PAC/FM), 2008 WL 2627614, at *3 (S.D.N.Y. June 30, 2008). The determination of whether these witnesses should be precluded from testifying at trial is within the sound discretion of the district court. See, e.g., Haas v. Delaware & Hudson Ry. Co., 282 F. App'x 84, 85-86 (2d Cir. 2008). Further, "[a] party seeking to reopen discovery "bears the burden of establishing good cause and discovery should not be extended when there was ample opportunity to pursue the evidence during discovery." Leong, 2016 WL 845325, at *3 (internal quotation marks and citation omitted).

## B. Analysis

Plaintiff argues that he substantially complied with Rule 26(a)(1)(A)(i) because: (1) he reasonably believed that all relevant witness information has been provided to defendants "through the discovery responses" and due to the parties' agreement to "waive initial disclosures so long as all relevant information would be disclosed via discovery responses. Plaintiff has continuously responded to Defendants' requests and have [sic] provided information through his document production"; and (2) many of the witnesses were identified in notices of deposition, within the operative complaint, or their "information was used during Mr. Monsour's deposition." Dkt. No. 75 at 6, 13-14, 19. Further, plaintiff contends that, even if he did not timely comply, the delay was substantially justified because defendants "had refused to allow Plaintiff to take any depositions of OPWDD employees until Defendants took Plaintiff's deposition and after the deposition of the Plaintiff in the Taylor case, which did not take place until

September 11, 2015." Dkt. No. 75 at 8-9. Finally, plaintiff argues that any delay was harmless because defendants were aware of the existence of all witnesses, and because a continuance is possible and would avoid any potential prejudice. Id. at 19-22.

### 1. Compliance with Rule 26(a)(1)(A)(i)

Plaintiff argues that the parties agreed to waive initial disclosures under Rule 26(a)(1)(A), instead agreeing to provide such information in the course of discovery. Dkt. No. 75 at 13. Plaintiff contends that he properly complied with the parties' agreement because he timely served initial disclosures, despite parties' agreement to waive them; responded to interrogatories; produced information as he obtained it; and because "all witnesses have been disclosed throughout this litigation through the discovery responses." Dkt. No. 75 at 6, 9. It does not appear disputed that the parties had an agreement to waive initial disclosures with the understanding that the names of the trial witnesses and the subject matter of their testimony would be revealed during the course of discovery. Dkt. Nos. 72-1 at 6-7 n.1; 75 at 13.

Plaintiff argues that he substantially complied with Rule 26(a)(1)(A) and the parties' agreement because defendants were "well keen to the existence and importance of all witnesses through the discovery process through notices of depositions, the Complaint, and through L.P.'s affirmation." Dkt. No. 75 at 14. The undersigned will address these arguments insofar as they apply to the two categories of witnesses defendants identify – those whose names were disclosed as potential trial

11

witnesses and those who were not identified as potential trial witnesses prior to September 17, 2015.

### a. Mr. Burns, Ms. Galvin, Mr. Introne, and Mr. Chmura

In contending that he revealed the identity of all of the witnesses currently in dispute through the discovery process, plaintiff first argues that the September 26, 2014 Rule 26(a) initial disclosures properly identified Mr. Burns, Ms. Galvin, Mr. Introne, and Mr. Chmura as trial witnesses.  Dkt. No. 69 at 3.  The undersigned concludes that the plaintiff's July 21, 2014 initial disclosure informed defendants of the identity of Mr. Burns, Mr. Chmura, Ms. Galvin, and Mr. Introne, and plaintiff's intention to call these individuals as trial witnesses, but because it did not include the subject matter of these witnesses' testimony, the initial disclosure did not meet plaintiff's duty to timely inform defendants of the identity of his trial witnesses and the subject matter of their testimony.[7]  Dkt. No. 72-3.  Plaintiff does not point to any specific response or document that informs defendants of the subject matter of these individuals' testimony.  Indeed, plaintiff objected to interrogatory twenty-two which asked for the subject matter of the trial witnesses' testimony.  See Dkt. No. 72-4 at 9, 72-5 at 10.  From what the undersigned can discern from the parties' submissions, it was not until September 28, 2015 that plaintiff provided defendant, via his letter to the Court, the subject matter of the trial testimony of the witnesses currently in dispute.  Dkt. No. 69.  Accordingly, the

---

[7]  Plaintiff provides that nineteen of the seventy-three witnesses provided in the initial disclosures are among the thirty-four (34) on Plaintiff's witness list at issue."  Dkt. No. 69 at 1.

undersigned concludes that, despite timely identifying Mr. Chmura, Ms. Galvin, Mr. Introne, and Mr. Burns as individuals he intended to call as trial witnesses, plaintiff did not reasonably comply with Rule 26(a) or the parties' agreement insofar as he did not provide the subject matter of their testimony until September 28, 2015.[8]

### b. Mr. Carey, Mr. Hakim, Ms. Lacewell, Mr. Willett, L.P.

It is clear that plaintiff first identified Mr. Carey, Mr. Hakim, Ms. Lacewell, Mr. Willett, and L.P. as potential trial witnesses on September 17, 2015, and first identified the subject matter of their testimony on September 28, 2015. Dkt. Nos. 69, 72-9. To the extent plaintiff may be contending that because certain individuals' names appear somewhere within documents produced in response to discovery demands, he sufficiently put defendants on notice of his intent to call those individuals at trial, this argument is unconvincing.

Rule 26(e)(1) requires parties to supplement Rule 26(a) disclosures and discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e)(1)(A). However, "such notice is not reasonable where it requires an opposing party to guess another party's intentions." Kullman, 2009 WL 1562840, at *7. Plaintiff appears to suggest that this

---

[8] Plaintiff's argument that defendants are not prejudiced by his failure to provide the subject matter of these witnesses in a timely manner will be addressed infra.

information was "otherwise . . . made known" to defendants. Defendants cannot be expected to predict that plaintiff may call at trial any individual whose name appears somewhere within plaintiff's document production if plaintiff does not also explicitly identify those individuals as witnesses who he intends to call at trial. See Peterson v. Pan Am Railways, Inc., 12-CV-1857 (LEK/CFH), 2015 WL 2451227 (N.D.N.Y. May 21, 2015) (concluding that it was unreasonable for the defendants to believe that the plaintiff had sufficient notice of their intent to call certain witnesses at trial merely due to the fact that they produced a supplemental Rule 26(a) disclosure providing, among other things, that they may seek to call at trial "[a]ny individual whose name appears on any documents marked as deposition exhibits or otherwise disclosed by either party during the course of the litigation.").

Similarly, in arguing that Mr. Carey, Mr. Hakim, and Ms. Lacewell "were all included in the Corrected Second Amended Complaint[,]" plaintiff suggests that defendants being informed of these witnesses' identities through the operative complaint amounts to proper disclosure under Rule 26(a) or the parties' agreement. Dkt. No. 75 at 13-14. Again, although mentioning these witnesses in the complaint may have informed defendants of the existence of these individuals, mere mention of these individuals in the complaint did not inform defendants of plaintiff's intent to call them as witnesses at trial. It would be entirely unreasonable to require defendants to assume that plaintiff intended to call every individual mentioned within his complaint unless plaintiff provided an indication of such. See Kullman, 2009 WL 1562840, at *7.

Insofar as plaintiff contends that the notices of deposition sufficed to place

defendants on notice of his intent to call Mr. Willett and L.P. as trial witnesses, Dkt. No. 75-1 at 2, 14,

> [t]he fact that a party may give notice of its intent to take the deposition of a witness indicates at most that the party intends to obtain discovery from the witness, not that the party intends to call that person as a witness at trial. Whether a person whose deposition is taken may also be called as a witness at trial and, if so, by what party remains a separate determination.

Kullman v. New York, No. 07-CV-716 (GLS/DRH), 2009 WL 1562840, at *6 (N.D.N.Y. May 20, 2009).  In assessing a party's duty to inform his opponent the identity of his trial witnesses, notices of depositions alone do not suffice.  See Kullman, 2009 WL 1562840, at *6 (noting that notice of depositions serve different purposes than Rule26(a)(1)(A)(i) disclosures); Peterson, 2015 WL 2451227, at *4 (Where the defendants first indicated that they may call "any witnesses deposed in this matter," but supplemented the notices with an e-mail stating which of the witnesses appearing for deposition would also be trial witnesses, such supplementation sufficed to provide the plaintiff with notice of the defendants' intent to call specific individuals as trial witnesses).

Further, although plaintiff served defendants with L.P.'s affirmation on December 18, 2014, Dkt. No. 75-1 at 2 ¶12, plaintiff first informed defendants of their intent to call L.P. as a trial witness on July 30, 2015.  Dkt. No. 72-7.  Again, although defendants may have been aware of the existence of L.P. and Jeremy Willett and plaintiff's intent to depose them, notices of deposition do not serve to inform the opposing party of an intent to call that witness at trial.

15

Finally, plaintiff makes a broad argument that he has provided the relevant information "through his document production," but does not explain how his discovery responses identified these witnesses as individuals he intended to call at trial or served to provide the subject matter of their testimony. Dkt. No. 75 at 6, 13.[9] In sum, the undersigned concludes that, despite the parties' agreement to waive initial disclosures, the parties still were required to comply with the spirit of the Rule 26(a)'s as well as Rule 26(e)'s requirements by informing the opposing party of the identity of trial witnesses and the subject matter of their testimony within sufficient time for the opposing party to depose them. Providing notices of deposition or a list of individuals one plans to depose, mentioning individuals in a complaint, serving an affirmation, or including documents in discovery responses that contain those individuals' names, without a statement from plaintiff that such parties may be called as trial witnesses, Dkt. Nos. 72-7, 72-8, does not put the defendants on notice of plaintiff's intent to call those individuals at trial. Accordingly, the undersigned finds that the above discussed methods did not satisfy the plaintiff's duty of informing plaintiff of the identity and subject matter of the trial testimony of Mr. Willett, Mr. Carey, Mr. Hakim, Ms. Lacewell, and L.P.

### c. Interrogatory Responses

Finally plaintiff's response to defendants' interrogatories did not serve to inform

---

[9] In contending that he provided defendants "information" through his document production, plaintiff cites to his answer to defendants' first set of interrogatories (wherein plaintiff declined to answer interrogatory number twenty-two). Dkt. No. 75-12 at 2. However, plaintiff does not explain how his interrogatory responses, or any other (unspecified) document production explicitly identified the witnesses in question as trial witnesses and provided their proposed testimony.

defendants of the identity of trial witnesses or the subject matter of their testimony. As discussed <u>supra</u>, in response to interrogatory number twenty-two, which asked plaintiff to "[i]dentify any and all persons whom Plaintiff intends to call as a fact witness at the time of trial, and for each person identified, specify the nature of the testimony that the person is expected to provide at trial and the nature of Plaintiff's relationship to that person," Dkt. No. 72-4 at 9, plaintiff "object[ed] to this interrogatory in that it is premature" and contended that he would "list trial witnesses at the appropriate time pursuant to the Federal Rules of Civil Procedure and local rules of the Northern District of New York and the Judge's individual rules and scheduling order."[10] Dkt. No. 72-5 at 10. It does not appear that, prior to the September 17, 2015 list, that plaintiff supplemented this interrogatory response. Thus, plaintiff did not inform defendants of the identity of the contested witnesses or the subject matter of their testimony through his interrogatory responses.

Accordingly, the undersigned determines that plaintiff's providing notices of depositions and L.P.'s affirmation, mentioning names in the corrected second amended complaint, or otherwise producing documents and answers to interrogatories during discovery did not serve to "otherwise . . . ma[k]e known" to defendants his intent to call as trial witnesses Mr. Willett, Mr. Carey, Ms. Galvin, Mr. Hakim, Ms. Lacewell, or L.P., or inform defendants as to the subject matter of their testimony. FED. R. CIV. P. 26(e)(1)(A).

---

[10] Plaintiff's interrogatory responses were served on or about December 18, 2014, which is after his initial disclosures. <u>See</u> Dkt. No. 72-5.

### 2. Plaintiff's Explanation

As an alternative argument, plaintiff contends that, even if he did delay in providing defendants with the identity and subject matter of his trial witnesses, any delay is due to defendants' demand that they first complete his deposition and that of Jane Taylor before deposing any others, and that it was not until his deposition that he "learned that his entire disciplinary history was going to be the focus of Defendants' defense." Dkt. No. 75 at 16. Plaintiff also contends that it was not until he learned of this approach that plaintiff knew of the need to present witnesses "who could testify to rebut Defendants' claim that Plaintiff had a disciplinary history." Id. at 16. Finally, plaintiff argues that any delay is harmless because all witnesses were disclosed through discovery responses or through mention in the corrected second amended complaint or notices of deposition, and because a continuance is possible.

Plaintiff contends that, if there is any delay in his discovery responses, the delay is the fault of defendants, who "objected to Plaintiff taking depositions prior to Defendants' deposition of Plaintiff and the deposition in the Taylor case." Dkt. No. 75 at 5. In so arguing, plaintiff suggests that it was not until his August 25, 2015 deposition that he became aware that his "entire disciplinary history was going to be the focus of defendants' defense"; thus, until his deposition, he was not aware of the need to present witnesses to rebut "Defendants' claim that Plaintiff had a disciplinary history." Dkt. No. 75 at 16. This argument is unconvincing for a few reasons.

First, the corrected second amended complaint discusses a variety of disciplinary actions taken or attempted against plaintiff, and one of the theories of this case is that

Ms. LaBarge "misused the OPWDD disciplinary process" and failed to adhere to a settlement agreement arising out of an alleged psychological abuse incident. Dkt. No. 59 at 10-14, 17, 30. As plaintiff's complaint alleges that defendants took disciplinary actions against him as a retaliatory measure, the undersigned does not understand why plaintiff would not anticipate that defendants would attempt to rebut his allegation or argue that the actions were justified, rather than retaliatory. Similarly, plaintiff's second amended complaint alleges violations of the First Amendment under 42 U.S.C. § 1983 and Section 504 of the Rehabilitation Act. If a plaintiff demonstrates a prima facie case in a First Amendment claim pursuant to Section 1983, the burden "shifts"[11] to the defendant to demonstrate nonretaliatory reasons for the discipline. Dillon v. Suffolk Cnty. Dept. of Health Services, 917 F. Supp. 2d 196, 204 (E.D.N.Y. 2013). In a retaliation claim pursuant to Section 504 of the Rehabilitation Act,[12] a similar burden-shifting approach applies. See, e.g., Sacay v. Research Foundation of City Univ. of N.Y., 193 F. Supp. 2d 611, 630-31 (E.D.N.Y. 2002). Thus, it seems unlikely that plaintiff would be unable to anticipate that defendants, in an attempt to rebut plaintiff's retaliation claims, would argue that any actions taken against plaintiff were due to his misconduct, disciplinary history, or were otherwise warranted.

Furthermore, based on plaintiff's descriptions of the witnesses' proposed

---

[11]   "Although a First Amendment retaliation claim under section 1983 is not evaluated using the McDonnell Douglas burden-shifting methodology, it too involves consideration of whether the plaintiff experienced an adverse action related to his or her employment as a result of protected conduct as opposed to alternative, legitimate, work-related reasons." Matusick v. Erie Cnty. Water Auth., 757 F. 3d 31, 47 (2d Cir. 2014).

[12]   "The Rehabilitation Act protects individuals who oppose any practice that the Rehabilitation Act makes illegal." Collins, 2016 WL 127591, at *7 (citing 29 C.F.R. 1614.101(b)).

testimony, it appears that plaintiff intends for the previously undisclosed witnesses to testify about matters that would have been apparent to plaintiff *before* his deposition. For example, plaintiff first identified L.P. as someone he intended to depose on July 30, 2015, but did not identify L.P. as a potential trial witness until September 17, 2015. Dkt. Nos. 72-7, 72-9.  In explaining L.P.'s importance, plaintiff contends that L.P. was "kicked out" of an OPWDD residence "for refusing to sign a release for a video tape, made by Defendants, in an attempt to discredit and fire Plaintiff." Dkt. No. 75 at 18. Plaintiff also refers to the fact that L.P. "made an affidavit regarding this event[.]" Id. However, plaintiff obtained L.P.'s affirmation on October 23, 2014, long before plaintiff's deposition occurred.  Dkt. No. 75-16.  Plaintiff fails offer a reasonable explanation as to why it would not be clear to him, prior to September 17, 2015, that L.P. is someone who he would want to call at trial, and why he would be unable to provide before September 28, 2015 – especially due to the fact that the deposition occurred back in 2014 – the subject matter of L.P.'s testimony.  Dkt. Nos. 69, 72-9.

Similarly, plaintiff first identified Mr. Hakim as a potential trial witness on September 17, 2015.  Dkt. No. 72-9.  Plaintiff did not earlier identify Mr. Hakim as someone he intended to depose and did not, at that time, provide the subject matter of his testimony.  Id.  In describing his importance, plaintiff notes that Mr. Hakim interviewed plaintiff for his articles and states that the "case exists because of Mr. Hakims [sic] expose and the retaliatory actions against Mr. Monsour." Dkt. No. 75 at 18.  Again, if plaintiff intended Mr. Hakim to testify at trial about his interviews of plaintiff and his articles, as he states he does, it does not appear that there would be anything

20

about the deposition that would alert plaintiff of a new-found need to have Mr. Hakim testify.

The undersigned is also unconvinced that plaintiff's deposition alerted plaintiff, for the first time, to the importance of Mr. Carey, who plaintiff claims will testify about a conversation between himself, Mr. Introne, and Governor Cuomo "about abuse allegations made by whistleblowers and the hostile work environment in which Plaintiff suffered." Dkt. No. 69 at 6. Even if the Court were to accept plaintiff's argument that he was previously unaware that defendants planned to argue that he had a disciplinary history, it does not appear that the deposition would cause plaintiff to suddenly realize the significance of Mr. Carey's testimony about a conversation with the Governor and Mr. Introne about abuse allegations and the hostile work environment he faced. See id.

Plaintiff provides that Ms. Lacewell will testify, as counsel to Mr. Introne, about how she was "made aware of Defendants' directing Plaintiff to accompany a pedophile to a children's costume event." Dkt. No. 69 at 7. It appears that this importance of such testimony would have been known to plaintiff prior to his deposition. Plaintiff contends in his corrected second amended complaint that his complaining about the appropriateness of bringing a sex offender to a children's costume event resulted in his retaliatory reassignment to a different facility – an allegation that was discussed in detail in the complaint and would appear relevant to his underlying retaliation claims. Dkt. No. 58 at 22.

As to Mr. Willett, plaintiff provides solely that he is "an OPWDD employee with knowledge of retaliatory actions taken against Plaintiff." Dkt. No. 69 at 8. This

statement does not provide sufficient information for the undersigned to assess whether it is reasonable for plaintiff to assert that his importance was unknown to plaintiff prior to his deposition. However, as plaintiff's claims in this case relate to retaliation, to the extent Mr. Willett will testify regarding retaliatory measures taken against plaintiff by OPWDD and Ms. LaBarge, it would appear that the importance of this testimony should have been known to plaintiff prior to the deposition.

Ultimately, the undersigned does not find convincing plaintiff's argument that he was unaware of the importance of obtaining the trial testimony of Mr. Willett, Mr. Carey, Mr. Hakim, Ms. Lacewell, and L.P., or the subject matter of any testimony they may provide,[13] until his deposition occurred.

### 3. Importance of Witnesses

### a. James "Michael" Burns

Plaintiff argues that James "Michael" Burns is an important witness because he is "the president of the Union CSEA Local 47, who was the subject of disciplinary actions due to Plaintiff." Dkt. No. 75 at 17. Further, plaintiff alleges that Mr. Burns "continued to be intimately involved in the retaliatory treatment of Plaintiff" and that defendant "continued to update Mr. Burns about Plaintiff's actions, even though Mr. Burns should have no knowledge and/or input into Plaintiff's employment." Id. Arguably, to the extent Mr. Burns had direct knowledge of retaliation occurring at the

---

[13] This would also apply to the subject matter of the witnesses whose identities plaintiff did timely supply – Mr. Burns, Mr. Chmura, Ms. Galvin, and Mr. Introne.

hands of Ms. LaBarge or OPWDD, such testimony may be of importance to plaintiff's case.

### b. Michael Carey

Plaintiff argues that Michael Carey "was a witness to a conversation with Governor Cuomo and James Introne, Deputy Secretary of Health, about abuse allegations made by whistleblowers and the hostile environment in which Plaintiff suffered." Dkt. No. 75 at 17. According to the corrected second amended complaint, Mr. Carey is "the father of Jonathan Carey, who died at the hands of a developmental aide at the O.D. Heck Center for developmental [sic] disabled individuals" who attended a meeting with the Governor, and "personally asked the Governor to grant Mr. Monsour whistleblower protection and get him out of the hostile work environment at OPWDD, and get him another well-paying job. Governor Cuomo agreed and directed Mr. Introne to find Mr. Monsour another job out of OPWDD." Dkt. No. 58 at 20.

Mr. Introne is no longer a defendant in this case, nor is there a First Amendment hostile work environment claim remaining. Dkt. No. 35 at 14-15. Plaintiff does not contend that Mr. Carey would have direct knowledge of retaliation at the hands of OPWDD or Ms. LaBarge beyond what plaintiff or others reported to him. Thus, it is unclear the importance or relevance of Mr. Carey's trial testimony, an individual who was not identified until September 17, 2015. Thus, this factor tips in favor of preclusion as to this witness.

### c. Max E. Chmura

Plaintiff contends that Max E. Chmura "is the former head of OPWDD who was intimately involved in ostracizing Plaintiff." Dkt. No. 75 at 17. As plaintiff provides very little for the undersigned to consider in assessing Mr. Chmura's importance, it is not possible to make an informed assessment as to the importance of this witness to plaintiff's case. However, as plaintiff claims retaliation by OPWDD and Ms. LaBarge, it is possible that Mr. Chmura's testimony regarding his knowledge of, or involvement in, any retaliatory conduct taken against plaintiff during his time as the head of OPWDD may be of importance at trial.

### d. Christine Galvin

According to plaintiff, Christine Galvin, OPWDD counsel, is an important witness because she "is intimately involved in decisions to take retaliatory actions against Plaintiff . . . Ms. Galvin is behind the retaliatory actions against Plaintiff . . ." Dkt. No. 75 at 17. Again, plaintiff provides hardly any information for this Court to consider in assessing the importance of Ms. Galvin's trial testimony. To the extent Ms. Galvin may be able to testify on retaliatory actions taken by Ms. LaBarge or OPWDD, her testimony may be of importance.

In their motion to preclude, defendants briefly contend that Ms. Galvin, as counsel for OPWDD, "would not be able to testify on any topics at all because any information she might have is protected by the attorney-client privilege." Dkt. No. 72-1 at 17. Plaintiff opposes this contention at length in his motion in opposition. Dkt. No. 75

at 22-23.  Whether any of Ms. Gavlin's testimony would be attorney-client privileged is not appropriately before this Court because defendants did not move to preclude Ms. Galvin on the basis of privilege, but on the ground that she was not timely disclosed as a trial witness under Rule 26(a), 26(e), and the parties' agreement.  Thus, the undersigned declines to address this argument at this time.

Although the undersigned lacks sufficient information[14] to truly assess Ms. Galvin's importance, arguably, Ms. Galvin may present important testimony at trial.

### e.  Danny Hakim

Danny Hakim "is the New York Times reporter who wrote a three-part expose of waste, fraud, and abuse committed by OPWDD.  Mr. Hakim interviewed Plaintiff and published two articles relating to Plaintiff's whistleblower activities.  This case exists because of Mr. Hakims [sic] exposé and the retaliatory actions against Mr. Monsour."  Dkt. No. 75 at 18.  Here, plaintiff does not explain how Mr. Hakim's testimony is important to his claims that defendants retaliated against him.  Plaintiff merely provides that Mr. Hakim interviewed him for his articles, but does not explain how he would have any personal knowledge of the retaliation plaintiff faced as result of his protected speech.  It would appear that any testimony Mr. Hakim would offer would be based on the statements plaintiff made to him in preparation for his article, rather than from any

---

[14]  In pointing out that plaintiff has provided very little information for the Court to consider regarding the importance of his potential trial witnesses, the undersigned is not suggesting that plaintiff need provide the Court with the *exact* testimony of these witnesses nor provide copious detail as to what they may testify about. Yet, although the Court is not stating that such exacting detail is required, the undersigned will note that sufficient specificity is necessary to make a true assessment of this factor.  For several of plaintiff's witnesses, sufficient detail is lacking.

personal knowledge. Thus, it appears unlikely that any testimony Mr. Hakim may have to offer would be distinct from what plaintiff could testify about in relation to the contents of the article. Further, as plaintiff is contending that he was retaliated against, in part, as a result of his statements to Mr. Hakim, plaintiff does not demonstrate how Mr. Hakim would have any direct knowledge of retaliation plaintiff faced after Mr. Hakim's articles were published. Accordingly, the undersigned concludes that plaintiff has failed to demonstrate the importance of Mr. Hakim's testimony. Thus, this factor tips in favor of preclusion as to this witness.

### f. James Introne

Referring to the importance of James Introne's testimony, plaintiff alleges that Mr. Introne "was the Deputy Secretary of Health who promised plaintiff a job to get him out of the hostile work environment and is a former named defendant. His importance is inherent in the fact that he was a named defendant and is mentioned throughout the Complaint." Dkt. No. 75 at 18. Although it may be clear to plaintiff why the fact that Mr. Introne was once a named defendant and is mentioned in the corrected second amended complaint means that Mr. Introne is an important witness, the undersigned is at a loss. The hostile work environment claim is no longer at issue in this case, and the undersigned cannot discern why it would be important to plaintiff's claims of retaliation whether or not Mr. Introne promised to get him a job and whether or not he followed up on this promise. The undersigned finds it unlikely – albeit not impossible – that Mr. Introne, who is not an OPWDD employee, may have testimony that is relevant to

26

plaintiff's remaining retaliation claims, plaintiff has failed to demonstrate as such. Plaintiff did identify Mr. Introne as a potential trial witness in his initial disclosures, but the undersigned fails to understand plaintiff's theory of his importance. Thus, this factor leans at least slightly in favor of preclusion, but is tempered by the fact that Mr. Introne's identity was timely disclosed.

### g. Linda Lacewell

Linda Lacewell "was counsel to Mr. Introne and was made aware of Defendants' directing Plaintiff to accompany a pedophile to a children's costume event." Dkt. No. 75 at 18. To the extent plaintiff contends that defendants' requirement that he accompany a pedophile to a children's event is an act of retaliation, if Ms. Lacewell had direct knowledge of this incident or was somehow responsible for advising defendants on this incident, it is possible that her testimony may be relevant. However, as plaintiff alleges that Ms. Lacewell was merely "advised" of this event in her position as counsel to Mr. Introne, the Deputy Secretary of Health, the undersigned is unsure if Ms. Lacewell has any *direct* knowledge of this incident. <u>Id.</u>   However, on balance, it is arguable that she may have important testimony on this matter.

### h. L.P.

Plaintiff provides that L.P. is a "former consumer at Stony Creek Individual Residence Alternative" was "kicked out for refusing to sign a release for a video tape,

made by Defendants, in an attempt to discredit and fire Plaintiff." Dkt. No. 75 at 18. As it appears plaintiff may allege that this videotape was a method of retaliation, and if L.P. has direct knowledge of this videotape, it would appear that L.P. is an important witness to plaintiff's case.

### i. Jeremy Willett

Jeremy Willett "is an OPWDD employee with knowledge of retaliatory actions taken against Plaintiff." Dkt. No. 75 at 18. Again, plaintiff provides essentially no information for the Court to consider in assessing this potential trial witness' importance. Assuming it is the case that Mr. Willett has knowledge of retaliatory actions taken, such as through direct observation, his information may be of importance at trial.

### 4. Prejudice

Plaintiff contends that defendants are not prejudiced by his delay in providing the subject matter of Mr. Burns, Mr. Chmura, Ms. Galvin, and Mr. Introne's trial testimony or the identity and subject matter of Mr. Willett, Mr. Carey, Mr. Hakim, Ms. Lacewell, and L.P. He suggests that defendants are not prejudiced because they otherwise were apprised of these witnesses' identities and subject matter of their testimony through document production, notices of deposition, affirmations, interrogatories, or his corrected second amended complaint. As discussed above at length, the undersigned is unconvinced that these documents sufficed to provide defendants with notice of plaintiff's intent to call the witnesses who were not identified prior to September 17,

2015 or the subject matter of the testimony of all of the witnesses currently in dispute.

Plaintiff cites to Peterson to argue that because he informed defendants of the identity of the witnesses, the fact that he did not timely provide the subject matter of their testimony did not prejudice them.  Dkt. No. 75 at 14-15 (quoting Peterson, 2015 WL 2451227, at *2-3).   In Peterson, the defendants' initial disclosure identified two individuals as trial witnesses, but did not disclose the subject matter of their testimony. 2015 WL 2451227, at *3.  After the close of discovery the defendants informed plaintiff that they would also seek to call "[a]ny witness deposed in this matter" and "[a]ny individual whose name appears on any documents marked as deposition exhibits or otherwise disclosed by either party during the course of the litigation."  Id.

The Court concluded that, although the initial disclosure was insufficient to provide plaintiff of notice of the testimony of the two identified witnesses, plaintiff was not prejudiced by the lack of knowledge of their testimony because he had knowledge of their identity and plaintiff's intent to call them at trial.  Peterson, 2015 WL 2451227, at *4.  Addressing defendants' belated disclosure of his intent to call any witness who was deposed, the Court determined that plaintiff also would not be prejudiced because in a supplemental disclosure, defendants provided that they intended to call "certain deposed individuals as witnesses."  Id.  The Court also noted that the supplemental disclosure came ten days after the close of discovery, and not "on the eve of trial."  Id. (citation omitted).  The Court found differently regarding the supplemental disclosure of defendants' intent to call "[a]ny individual whose name appears on any documents marked as deposition exhibits or otherwise disclosed by either party during the course

of litigation" because the disclosure of these individuals' identities did not occur until after the close of discovery.  Id.  Thus, the plaintiff could not depose these witnesses. Id.

Here, unlike in Peterson, none of the witnesses in question have been deposed. Although the prejudice is less significant regarding Mr. Burns, Mr. Chmura, Ms. Galvin, and Mr. Introne, because their identities were disclosed, defendants had no notice of plaintiff's intent to call as trial witnesses Mr. Willett, Mr. Carey, Mr. Hakim, Ms. Lacewell, and L.P.  These were not individuals who had been deposed but not yet identified as witnesses.  Cf. Peterson, 2015 WL 2451227, at *4.  Although Mr. Burns, Mr. Chmura, Ms. Galvin, and Mr. Introne were identified as trial witnesses, plaintiff did not depose these individuals.  Thus, the prejudice is even greater to defendants here than in Peterson.  Id.

Although plaintiff failed to provide the subject matter of all of these witnesses' testimony, as is required, defendants did have the opportunity to depose Mr. Carey, Mr. Chmura, Ms. Galvin, and Mr. Introne before the close of discovery.  Thus, the prejudice to defendants regarding the failure to identify the subject matter of these witnesses is not so great to warrant preclusion.  Peterson,  2015 WL 2451227, at *4.  However, defendants face much greater prejudice regarding Mr. Willett, Mr. Carey, Mr. Hakim, Ms. Lacewell, and L.P. who were not disclosed as trial witnesses until after discovery had closed; thus, defendants did not have the opportunity to depose these individuals. Id.

Courts in this Circuit have held that a defendant is prejudiced when discovery is

30

closed in a case and where permitting the witnesses would require the Court to reopen discovery for additional depositions, resulting in further delay of the case and additional litigation costs. Pal, 2008 WL 2627614, at *5. Here, the undersigned finds that defendants are prejudiced by plaintiff's delay in providing the identity of Mr. Willett, Mr. Carey, Mr. Hakim, Ms. Lacewell, and L.P. and disclosing the subject matter of the trial testimony for all of the nine witnesses in question.

### 5. Availability of Continuance

As discussed above, plaintiff has not demonstrated that his failure to disclose in a timely manner the identities of five of the nine witnesses or the substance of all of the witnesses' possible trial testimony was substantially justified or harmless. Indeed, the first factor – a party's explanation for its failure to comply with discovery – weighs in favor of preclusion for the reasons discussed above. The second consideration – the importance of the testimony to plaintiff's case, –leans in favor of preclusion for some witnesses and against preclusion for others, amounting to a neutral factor. The third factor – prejudice to defendants – tips in favor of preclusion regarding the previously undisclosed witnesses, for the reasons stated above. Finally, as to the fourth factor – availability of a continuance – the Eastern District, acknowledging that "'a continuance is always theoretically possible, [and] the closure of discovery weighs against a continuance,'" concluded that "this factor is neutral and does not weigh in favor of either party." Leong, 2015 WL 845325, at *6 (quoting Lujan, 284 F.R.D. at 76). The undersigned agrees with the Eastern District's logic that a continuance is a possibility in

the majority of cases; thus, the fact that the court can grant a continuance here, as it can in many cases, is a neutral factor.  Id.

Although the balance of the factors tip in favor of preclusion of at least the witnesses who were not identified as potential trial witnesses prior to September 17, 2015 – Mr. Willett, Mr. Carey, Mr. Hakim, Ms. Lacewell, and L.P. – the undersigned is cognizant that preclusion is an "extreme sanction"; thus, the Court must assess "the actual difficulties which the violation causes and most consider less drastic responses." Outley, 837 F.2d at 591.  As noted herein, it is difficult for the Court to evaluate the importance of many of these witnesses' testimony or the prejudice their expected testimony would impose on defendants' trial preparation based on the argument plaintiff has presented to the Court.  However, were the Court to preclude these witnesses from testifying at trial, as plaintiff asserts that some of these witnesses have direct knowledge of the retaliation he faced, it is possible that plaintiff would suffer a substantial impediment in proceeding with his case in the absence of such testimony.  Moreover, although a continuance may further delay this case, a short continuance is possible here and is warranted.  The case is not yet trial ready, as parties still must be afforded an opportunity to submit dispositive motions.  Thus, the undersigned finds that, even though plaintiff has not shown that his failure to timely supplement her Rule 26(a)(1) disclosures was justified or is harmless, many of the witnesses defendants seek to preclude are likely of importance to plaintiff's case.

Although the undersigned finds that plaintiff failed to comply with Rule 26(A)(1)(A)(i) and e(1) and/or the parties' agreement, insofar as he did not disclose his

intent to call Mr. Willett, Mr. Carey, Mr. Hakim, Ms. Lacewell, and L.P. until two days before discovery closed, and did not reveal the subject matter of any of the nine witnesses in question until ten days after discovery closed, the undersigned does not find that plaintiff's delays warrant preclusion of the witnesses. The undersigned recognizes that plaintiff's failure is not as extreme as the violations in cases that courts in this Circuit have sought to preclude; indeed, this is "not a case 'where the disclosing party waited until the eve of trial to disclose its witnesses.'" Peterson, 2015 WL 2451227, at *4 (quoting LaVigna v. State Farm Mut. Auto. Ins. Co., 736 F. Supp. 2d 504, 511 (N.D.N.Y. 2010)). However, because the undersigned concludes that plaintiff's delay was not substantially justified or harmless, it is appropriate that plaintiff bear the cost of any depositions that he wishes to take. Therefore, the Court will issue a continuance, opening discovery for thirty days from the date of entry of this Memorandum Decision and Order for the limited purpose of allowing plaintiff the opportunity to depose any of the nine witnesses at issue herein. Costs associated with these depositions, including ordering expedited copies of transcripts of any depositions taken and any reasonable travel expenses incurred by defendants in connection with the depositions, but excluding the hourly rate of the defense attorneys in attending or preparing for the depositions, will be borne by plaintiff.

### III.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED**, that defendants' motion for to preclude plaintiff from offering the

33

testimony of certain witnesses at trial pursuant to Fed. R. Civ. P. 37(C)(1) (Dkt. No. 72) is **DENIED**, and it is further

**ORDERED**, that discovery will be reopened for **THIRTY (30) days** following the entry of this Memorandum-Decision and Order for the limited purpose of obtaining depositions of Jeremy Willett, James "Michael" Burns, Michael Carey, Max E. Chmura, Christine Galvin, Danny Hakim, James Introne, Linda Lacewell, and L.P., and it is further

**ORDERED**, that expenses incurred as a result of these depositions – should any be taken – shall be bourne by plaintiff as set forth herein; and it is further

**ORDERED**, that parties have **sixty (60) days** following the expiration of the thirty (30) day discovery continuance to file any dispositive motions with the Court; and it is further

**ORDERED**, that the Court will issue a text order in this case scheduling a Rule 16 conference to take place after the expiration of the thirty (30) day continuance; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated: June 10, 2016,
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge